In the Matter of Acquiring Title by the COUNTY OF NASSAU to Certain Properties for Parkway Purposes in Connection with Cross Island Parkway, from Jericho Turnpike Southwesterly to the New York City Line and from Foch Boulevard Southwesterly to the New York City Line, in the Town of Hempstead, County of Nassau and State of New York, Duly Selected by the Board of Supervisors of the County of Nassau for Use of Said County as a Parkway According to Law.

County Court, Nassau County, July 6, 1939.

*Harry W. Moore,* for Coblens & Coblens, petitioners.

*Robert W. Duval, Deputy County Attorney,* for the county of Nassau, respondent.

JOHNSON, J. The county of Nassau sought to acquire certain real property by eminent domain for parkway purposes in connection with the Cross Island parkway. Among the parcels sought to be acquired was one owned by Sarah Mitchell, who retained as her attorneys, Coblens & Coblens, Esqs., by a written contract of retainer fixing the amount of fee to be paid to them in case of purchase of the property by the county or in case of an award for the property by the county to the extent of a certain percentage of the amount of the purchase price or award in excess of all liens and incumbrances, and giving her said attorneys a lien upon any such award or purchase price up to the amount of their fee. The attorneys for Sarah Mitchell then entered into correspondence with the county attorney and, in their letters to the latter, advised him that they were the attorneys for the owner of the premises in question and that negotiations for purchase should be conducted through them. Apparently, however, with their consent, the county attorney's office negotiated with Sarah Mitchell, but advised her attorneys that the proceedings had been instituted, the oaths of the commissioners filed and that title had vested in the county about January 1, 1939. Again, in reply to that notice, the attorneys for Sarah Mitchell advised the county attorney, by letter, that they were the attorneys for Sarah Mitchell, appearing for her in the proceeding and demanded that all notices be served upon them at their office and that they claimed a lien upon any award which might be made as a fee for their services. They later wrote to the county attorney, asking him in accordance with a conversation which they claim to have had with him, to advise them of the date when the closing would take place. The county attorney failed to advise them but later wrote them to the effect that the closing had taken place on March 31, 1939, and the full amount of the purchase price had been paid to Sarah Mitchell by payment of liens and taxes on the property to those entitled thereto and a balance of $636.72 to Sarah Mitchell, personally.

Under their retainer agreement, the amount to which the attorneys for Sarah Mitchell would be entitled is $372.50. The attorneys have now petitioned this court for an order directing the county of Nassau to pay them the said sum of $372.50 under their

attorneys' lien. The petitioners base their contention upon section 475 of the Judiciary Law. Under that statute and its predecessor, an attorney has what is known as a " charging lien " which is based upon the equitable doctrine that the attorney should be paid out of the proceeds of the recovery. The retainer, in the present case, specifically gives the petitioners a lien upon the purchase price or the award, as the case may be, for a sum ascertainable by computation. Such retainer operates as an equitable assignment and attaches to the award when made or to the appropriation when set aside to pay the purchase price. (*Deering* v. *Schreyer*, 171 N. Y. 451; *Lynch* v. *Conger*, 181 App. Div. 221; affd., 229 N. Y. 543.)

The client may, nevertheless, make an honest settlement without regard to the wishes of her attorney. The attorney's lien is subject to the client's right to settle in good faith, but, in case of such a settlement in good faith, the attorney may follow the proceeds to enforce his lien thereon and to insist that his share be ascertained and paid to him. (*Matter of Levy*, 249 N. Y. 168; *Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 id. 492.) However, where the settlement is made by the client with her adversary and the latter pays over the moneys with knowledge that the lien has attached thereto, he does so at his peril and is liable to the attorney for the amount of the lien in an equitable action to enforce it where he is unable to collect from his client because of her financial irresponsibility. The method of enforcement may be by action as well as by the proceedings under section 475 of the Judiciary Law, but, in any case, the attorney seeking to enforce the lien must establish the facts necessary to support his case and his complaint or petition is open to any defense that may be raised such as that there was no lien or that the same had been discharged or waived or forfeited. (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, *supra*.)

In such a case the defendant is bound to retain, and the law conclusively presumes that he has retained, a sufficient amount to pay the attorney's lien. (*Sargent* v. *McLeod*, 209 N. Y. 360.) The authority last cited was an action to foreclose an attorney's lien both against his client and the adversary who had made payment to the client with knowledge of the attorney's lien. There, again, however, it was made to appear that the client was insolvent.

Thus, if the present case were one involving an ordinary party other than a municipal corporation, it would seem clear that the county attorney was sufficiently advised by the petitioners of their attorneys' lien. For that purpose, their notice of appearance, although informal, was quite sufficient and was so treated by the county attorney, as was their notification to him that they had a

lien upon any award or purchase price that might be paid. If, therefore, a party other than a municipal corporation were involved, it would seem that, under section 475 of the Judiciary Law, the payment out to the petitioners' client would have been made at the peril of the party and that the party would be conclusively presumed to have withheld an amount sufficient to pay the petitioners' lien. However, from the authorities above cited, it would seem that the amount of such lien could be recovered from the adverse party only in the event of a showing that the petitioners' client was financially irresponsible.

In the present proceeding the petitioners' client was made a party, but has not appeared, having filed a doctor's certificate of her illness and inability so to do. She, therefore, has not been afforded an opportunity to interpose any defense she may have to the petitioners' claim, nor is there any proof sufficient to establish her financial irresponsibility.

Irrespective of that point, however, the important question arises by reason of the fact that the petitioners seek to recover the amount of their lien from the county of Nassau. Obviously, they are not bringing action against the county to fasten liability upon the county for a loss resulting to them because of some act or omission of the county attorney. It is, therefore, unnecessary to consider the question whether the county could be held liable for such act or omission resulting in a loss in view of the fact that it is substantially well settled that the county attorney is a public officer and is performing a governmental function in conducting a proceeding such as this. (*Thompson* v. *Hoffstatter*, 265 N. Y. 54.)

It is, therefore, necessary to consider the statutory provisions upon which the county relies herein denying its liability. Although section 475 of the Judiciary Law is of general application, it is, nevertheless, beyond question that a municipality may be empowered by legislation to prescribe additional requirements as a condition precedent to fastening liability upon such municipality. In the case of practically all municipalities this situation is most usually to be found in the legislation prescribing the filing of claims or notices of claim with some specified officer of that municipality as a condition precedent to maintaining an action or enforcing a claim against the municipality. In the instant case the county proceeded under the so-called Nassau, Suffolk and Erie Counties Improvement Act, being chapter 190 of the Laws of 1927, and the acts amendatory thereof. Section 3 of that act provided that wherever one of such counties was authorized to acquire real property for park, highway purposes and the like, the proceedings therefore, notwithstanding the provisions of any other general or

specific law, shall be conducted pursuant to said act. It would thus appear that if such act contained provisions relating to attorneys' liens they would constitute a proper addition to the requirements of the Judiciary Law and would be controlling in the case of attorneys' liens in condemnation proceedings. Section 20-a of the act provided as follows:

" § 20-a. Filing of liens and claims. The county treasurer shall receive verified notices of attorney liens and any other verified notices of liens or claims against any person to whom an award or sum of money shall be payable for the acquisition of real property by the county. Such notices shall be filed in the same manner as pledges, sales, transfers, and assignments of awards."

The foregoing section, by reference, therefore, incorporated the provisions of section 20 of the act, covering the transfer or assignment of awards and requiring that such should be filed in the office of the county treasurer and authorizing the county treasurer to make payments out with reference to transfers and assignments so filed and protecting the county in case the county treasurer should make payments accordingly.

These provisions are not new. They are substantially similar in all respects to the provisions of section 321-c of article 14 of the Village Law and to those of the charter of the city of New York, now to be found in the Administrative Code of the City of New York, sections B15–28.0 and B15–31.0.

It is conceded, in the present case, that the petitioners filed no notice of their lien in the office of the county treasurer. They contend that the provision for such filing is permissive only. I cannot so construe the statute. Reading sections 20-a and 20 together, as they must necessarily be read, the filing of such a notice or assignment in the office of the county treasurer is requisite in order to enable the county treasurer to make payments out in accordance with the notices in the order of their filing and protecting him and the county accordingly. Can it be said, in the instant case, that the county treasurer erred in making the payment out in the method in which he did? The fact that the county attorney had notice of the petitioners' lien does not charge the county treasurer with such notice nor is it shown that he had any such notice. Indeed, by virtue of the statute, it was his duty to make the payment to the client and he would not have been protected had he made the payment otherwise. Only in the event that there should be filed with him a proper notice or assignment could he legally have made payment to the petitioners. It seems to follow, logically, that the county treasurer having made the payment, as he was required to make it pursuant to law, has done nothing which

would make the county liable to pay a portion of the award a second time to the petitioners. Indeed, it seems to the court that this statute and all the similar statutes are aimed to protect the municipality and to place upon persons in the position of the petitioners the burden of seeing that their notice of lien or assignment is properly filed with the county treasurer before they can hold him or the county liable to make payment to them.

The application is, therefore, denied.