441 P.2d 771

**Lorren J. KUFFEL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 8422.**

Supreme Court of Arizona.

In Division.

May 29, 1968.

Stockton & Hing, by Carroll E. Dietle, II, Phoenix, for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, and J. Edward Shillingburg, Attys., Dept. of Justice, Washington, D. C., Jo Ann D. Diamos, U. S. Atty., Tucson, Richard C. Gormley, Asst. U. S. Atty., Phoenix, of counsel, for appellee.

McFARLAND, Chief Justice.

Appellant Lorren J. Kuffel appeals from a judgment rendered in favor of appellee United States of America who was an intervenor below in the garnishment proceedings instituted by appellant against Stephen M. A. Young, defendant-debtor. Appellant contends the lower court erred in holding that a federal tax lien was prior to Kuffel's garnishment lien and refusing to set any part of the garnisheed funds aside as attorney's fees for Kuffel's attorney.

The facts of this case are undisputed. Kuffel was a resident of California, and was in the business of selling truck and automobile parts and supplies. Stephen M. A. Young, hereinafter called Young, was a resident of California doing business individually, and as Western Cut Rate Lumber Co., hereinafter designated as Western, and as Edison Trucking Co., hereinafter designated as Edison. As of April 15, 1956, Young was indebted to Kuffel for the purchase of tires, truck parts, and other merchandise in the amount of $5,170.02, and on that date Young delivered to Kuffel an installment note for that amount. Young made only one payment for $561.67 on the note in June of 1956. Subsequent to April 15, 1956, Kuffel sold to Young additional merchandise in the amount of $4,-915.72 in excess of payments made by Young on the open account at different times. Kuffel made demands for payment of that sum, but Young failed to pay the amount owing.

On April 18, 1958, federal excise taxes in the amount of $11,972.17 were assessed against Young in California, and, on May 22, 1958, the District Director of Internal Revenue, San Francisco, California, filed a notice of lien for those assessed taxes with the County Recorder of Stanislaus County, Modesto, California, which was the place of residence of taxpayer Young.

On August 1, 1958, Kuffel commenced action against Young, individually, dba Western and dba Edison, in the Superior Court of Maricopa County, Arizona, based on Young's indebtedness to him. In accordance with Arizona statutes, Kuffel, as garnisher, caused writs of garnishment to issue, and to be served upon Ray Lumber Co., hereinafter designated Ray, and upon United Wholesale Distributors, hereinafter designated Distributors. On August 8, 1958, garnishee Ray answered the writ of garnishment, stating that it was not indebt-

ed to defendant Young. Three days later the other garnishee, Distributors, answered that it was not indebted to any of the named defendants, but that it was indebted to K. A. Spears Lumber Co., hereinafter called Spears, in the amount of $8,753.60 by reason of orders for lumber placed by Distributors with Spears which were invoiced to Distributors upon the invoices of Western, and that it was informed that Western was not owned by Young.

On October 27, 1958, the United States through the District Director served on the garnishee-Distributors a notice of levy which notified Distributors that all sums of money or other obligations in its possession and belonging or owing to Young were levied upon, seized, and demanded for satisfaction of Young's tax liability. Also, the United States government served a final demand on Distributors on March 23, 1959.

On April 6, 1959, the United States filed notices of a lien for taxes assessed on April 18, 1958, with the County Recorders of Maricopa and Pima Counties in Arizona.

On June 23, 1961, the United States' motion to intervene was granted, and its complaint filed. The government claimed that its lien for taxes, based on the 1958 assessments, was prior to rights of Kuffel that were created by the garnishment proceedings.

In July of 1961 Distributors amended its answer to the Writ of Garnishment, and stated that at the time of the service of the writ and at the time of answering said writ it was indebted to defendant Young, individually, dba Western and dba Edi-

son, in the sum of $8,573.60. Default was taken against Young, individually, dba Western, dba Edison, on August 2, 1961.

Subsequently the United States moved for summary judgment based upon the priority of its existing lien for taxes. On February 4, 1964, the trial court granted the United States government's motion for summary judgment in the total amount of $8,573.60 against Young, individually, dba Western and dba Edison; Kuffel; and Distributors, which sum was being held by Distributors as garnishee. The court held that the government liens were prior and superior to all other liens, claims and interests of all the other parties in the action, thereby refusing to allow Kuffel the reasonable value for the services of his attorneys.

Kuffel contends his filing and service of the writ of garnishment constituted an equitable assignment to him as the garnisher of the debt owned by Distributors to Young, and hence as garnisher he became a "purchaser" within the meaning of Section 6323(a) of the Internal Revenue Code of 1954 which entitled him to record notice of the tax lien. Kuffel further argues that he did not receive the requisite notice for the reason that notice of the tax lien was not filed in Arizona until after the garnishment proceedings were instituted in Arizona, although notice of the tax lien was filed in California prior to the filing and service of the writ of garnishment in Arizona.

Sections 6321, 6322, and 6323 of the Internal Revenue Code of 1954 set forth the provisions bearing on this case.[1]

---

1. "Sec. 6321. LIEN FOR TAXES.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C.1958 ed. Sec. 6321

"Sec. 6322. PERIOD OF LIEN.

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. 1958 ed. Section 6322

"Sec. 6323. VALIDITY AGAINST MORTGAGEES, PLEDGEES, PUR-

**324**

■ The federal tax lien is created by Section 6321 of the Internal Revenue Code of 1954, and it attaches to "all property and rights to property, whether real or personal, belonging" to the delinquent taxpayer. The lien attaches not only to all property held by the taxpayer on the date the lien arose, but also to after-acquired property. Glass City Bank of Jeannette v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56. The lien arises "at the time the assessment is made." Section 6322, Internal Revenue Code of 1954. The federal lien is perfected and choate at the time it arises. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

■■ The priority of a federal tax lien as against other interests created under state law is expressly governed in part by statute. Section 6323(a) of the 1954 Code —the provision relied upon by the garnisher, Kuffel—provides that, as against a holder of certain enumerated interests, including that of a purchaser, the tax lien is not valid until notice has been filed. The question then is: Did Kuffel become a purchaser within the meaning of federal law when he commenced the garnishment proceedings? We hold that he did not. The determination of those to whom Section 6323 is applicable is a federal question. United States v. L. R. Foy Construction Co., 300 F.2d 207 (C.A. 10th)

In United States of America v. Liverpool & London & Globe Insurance Company, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268, in discussing priorities of a tax lien over writs of garnishment issued and served and attorney's fees, the court said:

"The question of priorities is identical with that of United States v. Acri, 348

U.S. 211, 75 S.Ct. 239 [No. 33, this day decided,] and United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53. On the authority of those cases we hold the tax liens of the United States superior to the lien of the garnisher.

"As to the attorney's fee allowed the garnishee insurance company, Rule 677, Vernon's Texas Rules of Civil Procedure, provides:

"'Where the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff; where the answer of the garnishee has not been controverted and the garnishee is held thereon, such costs shall be taxed against the defendant and included in the execution provided for in this section; where the answer is contested, the costs shall abide the issue of such contest.'

"The District Court evidently found there was no contest between the insurance company and the other parties, and that the insurance company should be discharged with costs and allowance of a reasonable attorney's fee of $500. It, therefore, ordered the clerk to issue a check to the insurance company, payable out of the funds paid into the court by it.

"If the garnishment lien is not prior to the Government liens, and we have held that it is not, certainly fees allowed in that proceeding are not prior to the Government liens, and the authorization of the payment of the attorney's fees prior to the Government liens was error. The costs and fees should be adjudged

CHASERS, AND JUDGMENT CREDITORS.
"(a) *Invalidity of Lien Without Notice.*—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate— ·

"(1) *Under state or territorial laws.*— In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or * * *." 26 U.S.C.1958 ed., Sec. 6323

against the defendant, as provided by Rule 677."

Kuffel contends the effect of Section 12–1585, A.R.S.[2], is to make an equitable assignment by law from Young to him of the debt owed by the garnishee-distributor.

It did not appear from the garnishee-Distributors' answer that it was indebted to Young until after the government had intervened when Distributors amended its answer admitting its indebtedness. Furthermore, the only conceivable argument tending to support this claim would be that immediately upon service of the writ of garnishment Kuffel obtained a perfected, choate lien against Distributors' debt to Young which became an assignment.

■ In Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456, 459, we said:

"* * * from the date of service of the writ of garnishment any amount due or found to be due from the garnishee to the defendant is in control of the court and held by the court in abeyance until the hearing has been concluded, and cannot be paid to any person except on judgment of the court."

The effect of the writ of garnishment is, therefore, to impound any asset or property of defendant which is found in the hands of the garnishee pending the resolution of the merits of the garnisher's claim. The writ itself constitutes, at most, a lis pendens notice that a right to perfect a lien on the garnisheed property exists, but such perfection must await judicial action.

■ Any amount due from the garnishee to the debtor at the date of service of the writ is subject to the impounding effect of the writ. Weir v. L. B. Galbraith, 92 Ariz. 279, 376 P.2d 396. The most garnisher Kuffel had after service of the writ of garnishment was an inchoate

garnishment lien which could not have been perfected until the time judgment was rendered. At that time Kuffel did not have an absolute right to the funds impounded, but did have a right to have his claim heard without fear that the funds would be dissipated pending judgment. Under our state law Kuffel therefore had no assignment to him of Distributors' debt to Young. Furthermore, under federal law Kuffel did not become a "purchaser" within the meaning of Section 6323 Internal Revenue Code of 1954 upon service of the writ of garnishment, and he cannot claim the benefit of that section which requires that the United States give notice of its tax lien. United States v. L. R. Foy Construction Co., supra; United States v. Hawkins, 228 F.2d 517, 16 Alaska 36 (C.A. 9th).

■ The United States government took the necessary steps to perfect its lien. Even if Kuffel would have been entitled to record notice, which he wasn't, he did in fact receive such notice before he filed his writ of garnishment. Section 6323(a) of the 1954 Code provides that the federal tax lien is not valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary of the Treasury or his delegate *"In the office* designated by the law of the State or Territory in which the *property to the lien is situated"* when the State or Territory had designated an office for the filing of such notice. The property which is the subject of this case—*the Distributors debt—was personal property and the situs of such property was in the state of residence and domicile of the taxpayer, Young.* In re De Angelis, 373 F.2d 755 (C.A.3d); Walker v. Paramount Engineering Co., 353 F.2d 445 (C.A.6th); United States v. Goldberg, 362 F.2d 575 (C.A.3d); Marteney v. United States, 245 F.2d 135 (C.A.

2. "§ 12–1585. *Judgment against garnishee*
"If it appears from the answer of the garnishee, or otherwise, that the garnishee is indebted to the defendant in any amount or was so indebted when the writ was served, the court shall give judgment for plaintiff against the garnishee for the amount so admitted or found to be due defendant from the garnishee unless the amount exceeds plaintiff's judgment against defendant in which case it shall be for the amount of such judgment."

326

10th); Investment & Securities Co. v. United States, 140 F.2d 894 (C.A.9th).

Young was a resident of the State of California and the law of that state required that notice of a federal tax lien be filed in the office of the county recorder of the county within which the property subject to the lien was situated. Government Code, 34 West's Annotated California Codes, Section 27330. On May 22, 1958, the District Director of Internal Revenue filed a notice of tax lien with the County Recorder of Stanislaus County, Modesto, California, the place of residence of Young, more than two months before the garnisher instituted his action and filed his writ of garnishment in the court below on August 1, 1958. Consequently, the fact that the United States, through the District Director, did not file notices of lien in the State of Arizona until April 6, 1959, was irrelevant to the Superior Court's resolution of the relative priorities of the tax lien and the garnishment lien.

■ This result is in accord with the practicalities of this case. To require the government to file notices of tax lien in every place where a delinquent taxpayer has personal property would impose an awesome administrative burden on it, particularly with respect to intangible and transitory personal property. See Grand Prairie State Bank v. United States, 206 F.2d 217 (C.A.5th). On the other hand, the requirement that the government file its notice of lien where the taxpayer resides has the advantage of centralizing the place where the government must file its notice and where creditors of the taxpayer who are entitled to notice under Section 6323 may quickly ascertain what tax liens, if any, are outstanding against their debtor.

Kuffel also contends that even if the tax lien be held superior to the claim he asserts, the trial court erred in refusing to set aside out of the garnisheed funds an amount to compensate his attorneys for services which they rendered in creating and protecting that fund up to the time the United States government intervened in the proceeding below. The amount sought for the reasonable value of attorney's fees is $2,500.00. Kuffel did enter into a contingent-fee arrangement with his attorneys based on thirty-three and a third percent of the amount recovered. It appears that the amount claimed ($2,500.00) is close to the full amount which counsel would have received under their contingent-fee arrangement had they been successful. Kuffel would have the United States, the senior lienor, pay for its opponents' attorneys in addition to its own.

■ The relative priority of a United States government lien for unpaid taxes is a federal question. United States v. Equitable Life Assurance Society of the United States, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593; United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264. The general rule in courts of the United States is that each party to the litigation bears the expense of its respective counsel. However, one exception to this rule was noted in Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157. In that case, a holder of certain bonds brought suit against the trustees of the state improvement fund alleging mismanagement and waste of the fund which was to secure the bonds and asking that his claim be allowed, that the fund be charged with the payment thereof, and that an accounting be had. The relief was granted, valuable property was reclaimed to the fund, and agents were appointed for the sale of the property of the fund for the purposes of liquidation. During the liquidation, the holder of the bonds who had initiated the proceedings filed a petition for an allowance from the fund of his expenses, including attorney's fees. The court approved the allowance of attorney's fees, holding that where a bondholder, in good faith, filed a bill to secure the correct application of a fund and succeeded in bringing it under the control of the court for the common benefit of the bondholders, he is entitled to be paid for his costs and counsel fees before distribution. See also Sprague v. Titonic Bank, 307 U.S.

161, 59 S.Ct. 777, 83 L.Ed. 1184. However, the principle announced in the Greenough case has no application to the instant case where counsel for the garnisher, Kuffel, neither created nor protected the debt for the government. It is plain that Kuffel's attorneys did not create an asset where there was none before; they did not reduce a mere cause of action to judgment and thereby create a fund in which the United States government seeks to share.

Kuffel's contention is analogous to that which the Supreme Court of the United States considered in United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770. In that case, a foreclosure proceeding, the mortgagee, whose interest was senior to the tax claims of the United States government, contended that it was entitled to a reasonable attorney's fee ahead of the tax claims under the equitable rules against unjust enrichment. The court rejected this contention as being without merit. It noted that the services rendered by the mortgagee's attorney were rendered for the benefit of the mortgagee to protect his own interest in the property; the United States government, the holder of an adverse interest, received no such benefit from them that its interest was to be charged for them. See also: United States v. Equitable Life Assurance Society of United States, supra.

In the United States Supreme Court case of United States v. Liverpool & London & Globe Insurance Company, supra, it was held that a tax lien of the United States government was prior in right over a garnishment lien obtained by a creditor of the taxpayer in an action on an open account where the tax lien arose and was filed prior to the date the garnisher obtained judgment against the taxpayer, but subsequent to the date of the garnishment lien. The situation in that case is similar to the one in the instant case, and in that case the Court further held that if a garnishment lien is not prior to a federal tax lien the attorney's fees allowed to the *garnishee* in the garnishment proceedings are not prior to the tax lien. In that case the attorney's fees were denied to even the *garnishee.* See also: Nason v. Taylor, 351 Mass. 347, 221 N.E.2d 400.

The United States Supreme Court has even held where there is a statutory lien under state law it does not take priority over the lien of the United States government for unpaid taxes—that the validity of the lien is a federal question. In United States v. Pay-O-Matic Corp., D.C., 162 F. Supp. 154, the court held:

"Under Section 475 of the N. Y. Judiciary Law an attorney's lien is more than mere security; it is enforceable by remedy in the nature of foreclosure and may not be extinguished by action of the parties. Here Goldstein's lien arose at the commencement of the suit in condemnation and attached to the award finally made. Reisman v. Independence Realty Corp., 195 Misc. 260, 89 N.Y.S.2d 763, affirmed 277 App.Div. 1020, 100 N.Y.S. 2d 407; In re Cross Island Pkwy., Nassau County, 171 Misc. 652, 14 N.Y.S.2d 238. However, 'the relative priority of the lien of the United States for unpaid taxes is, as we said in United States v. Waddill Co., 323 U.S. 353, 356, 357, 65 S.Ct. 304, 306, 89 L.Ed. 294; * * * always a federal question to be determined finally by the federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this court.' United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264. Whether attorney Goldstein's lien by state tests would be held to be choate, it is clear that under federal tests it is as compared to that of the Government inchoate. It was not established for the amount of the lien was contingent on the outcome of a trial in the state condemnation court to fix the amount of the award to be made to Pay-O-Matic for the property condemned. It was but a 'caveat of a more perfect lien to come' (United States v. Scovil, 348 U.S. 218, 220, 75 S.Ct. 244, 246, 99 L.Ed. 271) and is therefore subordinate to the federal tax lien; United

States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 370, 98 L.Ed. 520."

 In the instant case there is no doubt the claim for attorney's fees is inchoate under federal interpretation; this Court must follow the holdings of the United States Supreme Court in determining the validity of the claim for attorney's fees. Accordingly, we hold that the lower court properly held the United States government lien was prior to both Kuffel's garnishment lien and any claim for reasonable attorney's fees.

Affirmed.

STRUCKMEYER and LOCKWOOD, JJ., concur.