700 P.2d 1348

Obadiah JACKSON and Charletta Jackson, husband and wife, Plaintiffs-Appellees,

v.

PHOENIXFLIGHT PRODUCTIONS, INC., an Arizona corporation; Barry B. Denenberg and Jane Doe Denenberg, his wife, individually and as officers, directors and stockholders of Phoenixflight Productions, Inc., John Does I–V; and ABC Corporations I–V, Defendants,

and

Celebrityflight Productions, Inc., an Arizona corporation, Garnishee,

and

Seatamatic Ticket Services of Diamonds, Garnishee Defendant,

and

Valley National Bank, Garnishee Defendant,

and

Arizona Department of Revenue, Intervenor-Appellant.

No. 1 CA–CIV 6444.

Court of Appeals of Arizona, Division 1, Department B.

June 14, 1984.

Friedl & Davis by William J. Friedl, Phoenix, for plaintiffs-appellees.

Robert K. Corbin, Atty. Gen. by John A. Muirhead, Asst. Atty. Gen., Tax Div., Phoenix, for intervenor-appellant.

GREER, Judge.

This case involves the determination of lien priorities as between a garnishor and the Arizona Department of Revenue. The ultimate issue is whether the plaintiffs garnishors hold a lien on the garnishees' debts owed to the defendant taxpayer, and if so, whether that lien takes priority over the Department of Revenue's lien on all the taxpayer's property and rights to property, for taxes due. We hold that although the garnishors' service of a post-judgment writ of garnishment gives the garnishors a lien on the garnished property, the Department of Revenue's lien is entitled to priority.

## FACTS

The Jacksons (plaintiffs) recovered a judgment against Phoenixflight for an unpaid debt. Celebrityflight, the defendant taxpayer, owed a debt to Phoenixflight. Plaintiffs garnished that debt, Celebrityflight failed to answer, and a default judgment was entered against Celebrityflight on April 2, 1981. Plaintiffs recorded the default judgment against Celebrityflight with the Maricopa County Recorder on April 15, 1981.

Valley National Bank (Bank) and Seatamatic Ticket Services of Diamonds (Diamonds) owed debts to Celebrityflight. On April 8, 1981, plaintiffs served writs of garnishment on the Bank and Diamonds pursuant to their default judgment against Celebrityflight. The Bank and Diamonds answered the writs and admitted indebtedness to Celebrityflight. On May 22, 1981, the trial judge dismissed Celebrityflight's motion to dismiss the default judgment, but failed to enter formal judgment of garnishment on the writs, as he was on vacation. On June 1, 1981, before a final garnishment judgment could be signed, the Arizona Department of Revenue (Depart-

ment) filed, with the Secretary of State, its notice of tax lien against Celebrityflight for delinquent taxes. Also on that date, the Department of Revenue served notices of levy upon the Bank and Diamonds, demanding payment in satisfaction of Celebrityflight's delinquent taxes. On June 2 and 10, 1981, the Department filed additional notices of tax lien against Celebrityflight for additional delinquent taxes. On June 17, 1981, the Department moved to intervene in plaintiffs' garnishment proceedings against the Bank and Diamonds, which motion was granted. The trial court heard oral argument on the parties' cross-motions for summary judgment, and held that the plaintiffs' garnishment rights were superior to the Department's tax liens. The Department appeals from that decision.

■■■ We note initially that plaintiffs argue in their answering brief that the trial judge erred in allowing the Department to intervene. Granting a motion to intervene is within the trial judge's discretion, and we will not disturb that decision absent clear abuse of that discretion. Rule 24, Arizona Rules of Civil Procedure; *State Farm Mutual Automobile Insurance Co. v. Paynter*, 118 Ariz. 470, 577 P.2d 1089 (App. 1978). In this case, the Department moved to intervene only two weeks after serving its first notice of lien and levying on the garnishees, actions which created its interest in the specific property. Final judgment on the garnishment action had not been entered. The Department's intervention did not broaden the scope of the proceedings against the Bank and Diamonds, and the Department's interest in the garnishment proceedings was direct and immediate. *Morris v. Southwest Savings and Loan Assoc.*, 9 Ariz.App. 65, 68, 449 P.2d 301, 304, (1969). We find no abuse of discretion.

In order to determine the lien priorities in this case, we must first decide what rights plaintiffs held by their service of the writs of garnishment. Then, we can determine whose rights are entitled to priority.

## GARNISHMENT

The Arizona garnishment statutes, A.R.S. § 12–1571 et seq., are silent on the issue of whether service of a writ of garnishment creates a lien. The Department cites *Kuffel v. United States*, 103 Ariz. 321, 441 P.2d 771 (1968) for the proposition that the mere service of a writ of garnishment, without "judicial action," merely impounds garnished property and is insufficient to give the garnishor lien rights to the garnished property. The Department contends that the judicial action referred to is a judgment against the garnishee. The Department relies on the following language in *Kuffel* to support its position:

> The effect of the writ of garnishment is therefore, to impound any asset or property of defendant which is found in the hands of the garnishee pending the resolution of the merits of the garnisher's claim. The writ itself constitutes, at most, a lis pendens notice that a right to perfect a lien on the garnisheed property exists, but such perfection must await judicial action.

103 Ariz. at 325, 441 P.2d at 775. The Department argues that absent a judgment of garnishment, *Kuffel* gives plaintiffs only an inchoate right upon service of the writ of garnishment; and since A.R.S. § 42–1821 [1] gives the Department a lien upon all of a taxpayer's personal property for unpaid taxes at the time those taxes become due, the Department should have priority in this case. The essence of the Department's argument is that plaintiffs' interest is inchoate, and therefore not a lien, whereas the Department's lien is choate, and therefore entitled to priority.

■■■ The Department's reliance on *Kuffel* is misplaced. In that case, Kuffel

1. A.R.S. § 42–1821 provides:
   If any tax, interest or penalty which the department is required to collect is not paid by a taxpayer when due, such unpaid amounts constitute a lien from the date such amounts become due upon all property and rights to property, whether real or personal, belonging to the taxpayer or thereafter acquired by him.

sued the taxpayer and served writs on the garnishee in August 1958; the United States served notice of tax lien in April 1959; but Kuffel's default judgment against the taxpayer was not entered until August 1961. Thus, that case involved a *pre-judgment* garnishment situation. The Arizona Supreme Court held that the tax lien took priority over the garnishment because

> The most garnisher Kuffel had after service of the writ of garnishment was an inchoate garnishment lien which could not have been perfected until the time judgment was rendered.

103 Ariz. at 325, 441 P.2d 771. *Kuffel's* language bespeaks the fact that the "judgment" referred to is the judgment against the defendant taxpayer, not the garnishment judgment. The court referred to Kuffel's pre-judgment interest as an inchoate *lien*. The reason Kuffel was denied priority is that his interest was inchoate without an underlying judgment against his debtor, not because he had no lien. A "choate" lien arises when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. *United States v. City of New Britain, Connecticut*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Before a judgment is entered against the debtor, the amount of the garnishor's lien cannot be established; it will be dependent upon the outcome of the action on the debt. *See, United States v. Acri*, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955). Therefore, the lien is inchoate.

In the case at bar, plaintiffs took their default judgment against Celebrityflight *before* they served the writs on the garnishees. Although in *Kuffel* the garnishor had, at most, a pre-judgment *inchoate* garnishment *lien*, here, plaintiffs' default judgment, coupled with service of the writs, gave them a *choate* garnishment *lien:* The lienors are clearly the plaintiffs, the writs of garnishment identify the property subject to the lien to be the garnishees' debts to the taxpayer, and the amount of the lien is established by the plaintiffs' default judgment against Celebrityflight, coupled with the garnishees'

answer admitting indebtedness sufficient to cover Celebrityflight's debt to plaintiffs.

■■■ To sum, we hold that plaintiffs' default judgment against Celebrityflight, coupled with the service of writs of garnishment on the garnishees, was sufficient to give the plaintiffs a choate lien on the garnished debt. We decline to accept the Department's contention that a debt cannot be the subject of a garnishment lien. A debt, the payment of which is not contingent upon the occurrence of any event, is subject to a writ of garnishment. *Weir v. Galbraith*, 92 Ariz. 279, 376 P.2d 396 (1962). The Department does not suggest, nor does the record indicate, that the garnishees' debts to Celebrityflight were contingent.

At oral argument, the Department cited *Daniel v. East Texas Theaters*, 127 S.W.2d 240 (Tex.Civ.App.1939) for the proposition that the garnishment of a debt entitles the plaintiffs to a money judgment only, which is not a lien until judgment is entered and executed upon. The Texas case is relevant because our garnishment statutes are based upon the Texas statutes. *See*, Historical Notes to A.R.S. § 12–1571, et seq. However, we read the language of that case to support our holding. In *Daniel*, the court stated,

> The effect of a writ of garnishment is to impound any monies or property held by the garnishee belonging to the defendant debtor. The writ fixes a *lien*, in favor of the plaintiff below, on property thus impounded, and if a debt is impounded, a money judgment may be taken against the garnishee which may be enforced like any other judgment.

127 S.W.2d at 242. [Emphasis added]. The plaintiff had secured a judgment against the defendant debtor. Although the plaintiff had also secured a judgment against the garnishee, it was only a partial judgment, without a right of execution, since the garnished money had been replevied by the defendant. In effect, the "par-

tial judgment" acknowledged the fact that the garnishee was indebted to the defendant, and that defendant was indebted to plaintiff, but that the garnished funds had been paid out and were not caught by the writ.[2] Later, the replevin bond was found to be defective, and the *Daniel* court, reversing the trial court, held that plaintiff was entitled to full judgment. The court stated, "The only reason the trial court did not give a judgment against the garnishee, with full right of execution, was occasioned by the giving of the replevin bond, which was subsequently held invalid by the Court of Civil Appeals [in a companion case]." 127 S.W.2d at 242. We thus read *Daniel* to mean that the plaintiff in that case had a full lien on the garnished property by virtue of the underlying judgment and service of the writ, *without* a full formal garnishment judgment. We recognize that the court placed significance on the fact that the garnishee had wrongfully paid the defendant after the writ had been served, a situation not present in the case at bar. Although this consideration may have propelled the court to its final conclusion, nothing in the case suggests that this equity, or the partial judgment, created the lien. To the contrary, the court specifically stated that "the writ fixes a lien."

A second reason we disagree with the Department's contention that plaintiffs' lien is contingent upon their obtaining a formal judgment against the garnishees is that it would be impractical and illogical to condition the fixing of plaintiffs' lien on the fluctuating expediency of the judicial process. In the case at bar, similar to the *Daniel* facts, the only reason the judge did not sign a formal judgment against the garnishees is that he was on vacation.

**2.** This "partial judgment" therefore accomplishes the same effect as plaintiffs' default judgment plus service of the writs of garnishment: acknowledging that garnishees are indebted to defendant and defendant is indebted to plaintiffs.

**3.** The Department recorded its lien pursuant to § 42–1822(B), which provides:

This does not prevent plaintiffs' lien from attaching.

## PRIORITIES

Plaintiffs held a choate lien on the garnished property when they served the post-judgment writs of garnishment. However, the question remains as to which lien is entitled to priority.

A.R.S. § 42–1821 gives the Department a lien upon the taxpayer's property and rights to property, for the amount of unpaid taxes, as of the date the taxes become due. Celebrityflight owed $16,679.51 in taxes on March 6, 1981. Therefore, the Department had a choate lien upon the taxpayer's property to that extent on March 6, 1981.

A.R.S. § 42–1824(A)(1) gives the Department priority in certain cases. Subsection (A)(1) provides:

A. The amounts required to be collected by the department, with interest and penalties, shall be satisfied first in any of the following cases:

1. If the person is insolvent.

In this case the trial judge found Celebrityflight to be insolvent. However, the priority authorized in subsection (A)(1) is limited by § 42–1824(B), which states:

This subsection does not give this state a preference over any recorded lien which was recorded prior to the time the department recorded a notice of lien pursuant to § 42–1822.[3]

Thus, if the plaintiffs have a lien which was recorded before the Department recorded its lien pursuant to § 42–1822(B), the plaintiffs are entitled to priority. If the plaintiffs did not record their lien before the Department filed its notice of lien, then § 42–1824(A)(1) entitles the Department to priority.

The lien imposed by § 42–1821 may be perfected by the Department against the taxpayer's personal property or rights to personal property located within this state by recording a notice of lien in the form prescribed by subsection D of this section in the office of the secretary of state.

Plaintiffs filed their default judgment against Celebrityflight on April 15, 1981 in the office of the county recorder. The Department filed its notices pursuant to § 42–1822(B) on June 1, 2 and 10, 1981.

The Department contends that the plaintiffs' filing of their default judgment with the county recorder was insufficient to give them priority for two reasons. It contends first that it is the garnishment judgment which must be filed, and second, that plaintiffs' recordation in the county recorder's office operates to give them a lien upon Celebrityflight's real property only, and not upon the garnished debt.

■ We disagree with the Department that the county recorder's office is an improper location to record a garnishment lien to establish priority over a tax lien. The tax statutes are silent on the proper location for recording. However, A.R.S. § 11–468 provides:

When any instrument is authorized or required by law to be recorded, it shall be recorded, unless otherwise expressly provided, in the office of the county recorder of the county in which the property or thing, or part thereof, affected by the instrument is located, but if only personal rights are affected thereby, then in the county where the parties thereto reside.

This statute is not limited to real property.

■ We agree with the Department, however, that § 42–1824(B) contemplates that, in insolvency situations, a garnishor must record either the underlying judgment *and* writ, or the *garnishment judgment* in order to gain priority over a subsequently recorded tax lien. The language of

subsection (B) gives priority to a prior *"recorded lien."* Plaintiffs successfully argued that the underlying judgment against the debtor, coupled with the writ of garnishment, establishes the lien. Plaintiffs' money judgment against Celebrityflight, which plaintiffs recorded, was not a lien on the specific property in the hands of the garnishee. In order to comply with the language of § 42–1824(B), the garnishor must record the documents which embody the lien—either the underlying judgment and writ, or the garnishment judgment—in order to establish priority over specific garnished property.[4] Since plaintiffs did not record their lien within the requirement of § 42–1824(B), the Department is entitled to priority under § 42–1824(A)(1).

For the foregoing reasons, the judgment is reversed to the extent that it awards plaintiffs' claim priority over that of the Intervenor Department of Revenue, and the trial court is directed to enter judgment establishing the priority of the Department's claim.

MEYERSON, P.J., and FROEB, J., concur.

---

**4.** The underlying judgment, the writ and the garnishment judgment are all recordable instruments. A.R.S. § 11–480(A) provides:

A. Any instrument presented to a county recorder for recordation shall meet the following conditions:

1. Each instrument shall have a caption briefly stating the nature of the instrument, such as warranty deed, release of mortgage, notice of bulk sale and like captions. The county recorder shall have no obligation to index any instrument under any subject index category maintained by the county recorder unless that category is included in the caption to the instrument.

2. Each instrument shall be an original or a copy of the original and shall be sufficiently legible for the recorder to make certified copies.

3. Each instrument shall have original signatures or carbon copies of such signatures, except when otherwise provided by law.