In re Lester D. LANE and Bonnie
F. Lane, Debtors.

HURST CONCRETE PRODUCTS,
INC., Appellant,

v.

Lester D. LANE; Bonnie
F. Lane, Appellees.

No. 91–55534.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1992.

Decided Dec. 1, 1992.

Patrick T. Loughman, Lowthorp, Richards, McMillan, Miller, Conway & Templeman, Oxnard, Cal., for appellant.

Randolph Joyce, Simi Valley, Cal., for appellees.

Before FEINBERG,* GOODWIN, and SCHROEDER, Circuit Judges.

GOODWIN, Circuit Judge:

Hurst Concrete Co. ("Hurst") appeals a Bankruptcy Appellate Panel ("BAP") decision denying the secured status of Hurst's claim to the real property of Lester and Bonnie Lane ("Lanes").

The threshold question is whether the Superior Court's judgment in the underlying case affected the title or right of possession of real property within the meaning of the California lis pendens statute. Cal. Civ.Pro.Code § 409(a). We disagree with the BAP's finding that the Superior Court's judgment did not affect the title or right of possession of the Lanes' real property.

The determinative question then is whether the recording of the lis pendens, which occurred prior to the preference period, constituted a transfer under the Bankruptcy Code. 11 U.S.C. § 547(e)(1)(A). We hold that, under California law, the record-

---

* Honorable Wilfred Feinberg, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

ing of a lis pendens constitutes a transfer within the meaning of section 547(e)(1)(A), and, consequently, appellant's interest in the Lanes' property is not avoidable as a preferential transfer. We reverse.

## BACKGROUND

Appellant-creditor Hurst is a California corporation. Appellee-debtor Lester Lane was, until December 1983, the vice-president and general manager of Hurst. Appellee-debtor Bonnie Lane is Lester Lane's wife.

On September 7, 1984, Hurst initiated an action against the Lanes, among other defendants, alleging several claims, including conversion, constructive trust, and fraudulent conveyance. Hurst alleged that the defendants had converted and sold concrete pipe valued at $250,000 and then diverted the proceeds for their own personal use. Furthermore, Hurst claimed that the proceeds were invested in real property and that certain parcels of real estate were fraudulently conveyed from Lester to Bonnie Lane in order to hinder Hurst's recovery. On that same day, Hurst obtained a temporary restraining order against debtors prohibiting them from conveying, encumbering, or otherwise disposing of any assets during the pendency of the lawsuit. On October 11, 1984, the Superior Court issued a preliminary injunction to this effect.

Hurst filed a notice of pendency of action in Ventura County on September 12, 1984 and in Santa Barbara County on September 24, 1984.

On June 9, 1987, the Superior Court found in favor of Hurst. In its judgment, the court found that there had been a fraudulent conveyance of real property, and it also awarded compensatory and punitive damages to Hurst. The court held that the preliminary injunction restraining defendants from conveying the real property would remain in effect until further order by the court.

June 18, 1987 marks the beginning of the ninety day preference period preceding the filing of the Lanes' bankruptcy petition.

On June 24, 1987, Hurst recorded abstracts of the Superior Court's judgment in Santa Barbara County. On July 7, 1987, Hurst recorded an abstract of the Superior Court's judgment in Ventura County.

On September 16, 1987, the Lanes filed a voluntary petition under Chapter 11 of the Bankruptcy Act.

On a motion to determine the secured status of Hurst's claim to the Lanes' real property, the bankruptcy court found in favor of Hurst. The court found that Hurst's claim was secured, because the filing of the abstracts of judgment should relate back in time to the filing of the lis pendens, which was prior to the preference period. The BAP reversed on the ground that the Superior Court's judgment did not affect title or possession of property, and, therefore, there could not be any relation back in time to the filing of the lis pendens.

## STANDARD OF REVIEW

Decisions of the BAP are reviewed de novo. *In re Dewalt*, 961 F.2d 848, 850 (9th Cir.1992); *In re Two S Corp.*, 875 F.2d 240, 242 (9th Cir.1989). The court of appeals reviews the bankruptcy court's conclusions of law de novo and its findings of facts under the clearly erroneous standard. *Dewalt*, 961 F.2d at 850; *Two S*, 875 F.2d at 242.

## DISCUSSION

I. Effect of Superior Court Judgment

A lis pendens filed with the county recorder is a notice that an action is pending "concerning real property or affecting the title or right of possession of real property." Cal.Civ.Pro.Code § 409(a). The meaning of the phrase "concerning real property" is identical to "affecting the title or right of possession of real property." *Burger v. Superior Court*, 151 Cal.App.3d 1013, 1017, 199 Cal.Rptr. 227 (1984).

■ Recordation of a lis pendens binds all subsequent parties who acquire an interest in the property by the judgment thereafter rendered in the action. *Urez Corp. v. Superior Court*, 190 Cal.App.3d

1141, 1144, 235 Cal.Rptr. 837 (1987). The ultimate operation of the lis pendens on the Lanes' property is measured by the terms and effective scope of the decision rendered in the Superior Court. *Rose v. Knapp,* 153 Cal.App.2d 379, 386, 314 P.2d 812 (1957).

■ The BAP held that the Superior Court's judgment of money damages is an insufficient basis for the lis pendens filed by Hurst. Under California law, a finding of money damages does not support a lis pendens, because it does not affect the title or right of possession of property. *See, e.g., Urez,* 190 Cal.App.3d at 1145, 235 Cal. Rptr. 837. However, the record reveals that the Superior Court's judgment also included a finding in Hurst's favor on its cause of action for the fraudulent conveyance of real property. A lis pendens is appropriate in connection with a fraudulent conveyance cause of action. *McKnight v. Superior Court* 170 Cal.App.3d 291, 299–300, 215 Cal.Rptr. 909 (1985); *Putnam Sand & Gravel Co. v. Albers,* 14 Cal. App.3d 722, 92 Cal.Rptr. 636 (1971). The court confirmed Hurst's interest in the property by prohibiting any transfer of the property until further order by the court.

■ The Superior Court's order prohibiting transfer clearly affected the possession of the Lanes' property. A judgment affecting possession of property relates to, and receives its priority from, the date the lis pendens is recorded, and is senior and prior to any interests in the property acquired after that date. *Stagen v. Stewart–West Coast Title Co.,* 149 Cal.App.3d 114, 123, 196 Cal.Rptr. 732 (1983).

## II. Preference Analysis

The effect of the "relation back" doctrine on Hurst's claim to be a secured creditor depends on whether a properly recorded lis pendens constitutes a "transfer" under section 547 of the Bankruptcy Code.

■ The Bankruptcy Code allows the debtor to avoid "preferential transfers," which are transfers that occurred within a 90–day period prior to the filing of the bankruptcy petition. 11 U.S.C. § 547(b).[1] If the transfer of Hurst's interest in the Lanes' real property occurred when it recorded the lis pendens, then the transfer occurred outside of the preference period, and Hurst is a secured creditor. Section 547 provides the framework for our analysis:

A transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such a transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.

11 U.S.C. § 547(e)(1)(A). Applying this definition to the case at hand, the question is whether, following Hurst's filing of its lis pendens, a bona fide purchaser of the Lanes' real property could acquire an interest superior to Hurst's interest in the property.

"Determining what is necessary to perfect a transfer of an interest in real property depends entirely on state law." *In re Gulino,* 779 F.2d 546, 549 (9th Cir.1985). Section 409 of the California Code of Civil Procedure sets forth the effect of a lis pendens:

From the time of filing the notice for record only, a purchaser or encumbrancer of the property affected thereby shall be deemed to have constructive notice of the pendency of the action as it relates to the real property and only of its pendency against parties designated by their real names.

Cal.Civ.Pro.Code § 409(a).

Appellees argue that the effect of a lis pendens is merely to give notice of a pend-

---

**1.** This discussion focuses on the preference period. To establish an avoidable transfer, a litigant would have to satisfy seven criteria: (1) a transfer (2) of the debtor's property (3) to or for the benefit of the creditor (4) for or on account of an antecedent debt (5) made while the debtor was insolvent (6) within 90 days before the original filing of the petition (7) which enables the creditor to receive more than he would receive under a Chapter VII liquidation. 11 U.S.C. § 547(b).

ing claim. They emphasize that, under California law, a lis pendens does not create a lien on the property and, therefore, perfection does not occur until a judgment which affected the real property. Appellees misconstrue both the effect of filing a lis pendens and the definition of a transfer under 11 U.S.C. § 547.

Due to the constructive notice supplied by a lis pendens, a conveyance of the real property to a subsequent bona fide purchaser "is void as against ... any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action." Cal. Civ.Code § 1214. Once Hurst recorded the lis pendens, its interest was perfected, because no subsequent purchaser of the Lanes' property could acquire an interest superior to its interest. *Stagen,* 149 Cal. App.3d at 123, 196 Cal.Rptr. 732.

Appellees rely on *Putnam Sand & Gravel Co. v. Albers,* 14 Cal.App.3d 722, 92 Cal.Rptr. 636 (1971); however, *Putnam* involved an unusual fact situation. In *Putnam,* a creditor sued to have a fraudulent conveyance set aside and filed a lis pendens. While the suit was pending, the property was reconveyed to the debtor. The court, in the interest of judicial economy rather than strict adherence to the letter of the law, took the extraordinary step of allowing the conveyance, because "the very thing requested by plaintiff in its complaint was, in fact, accomplished by the reconveyance." *Id.* at 726, 92 Cal.Rptr. 636.[2]

■ This unusual case does not affect the general rule that a subsequent purchaser cannot acquire an interest in property superior to the interest of a party that has filed a lis pendens. In the present case, the Superior Court's judgment merely quantified the extent of Hurst's perfected interest. Until judgment, his interest may have been the entire property, a lien on the property, or zero interest in the property.

The last option may seem counterintuitive. However, the definition of a transfer under section 547 is unambiguous: a transfer is perfected when a subsequent purchaser cannot acquire a superior interest.

■ The purpose of section 547 was to "discourage[ ] 'secret liens' upon the debtor's collateral which are not perfected until just before the debtor files for bankruptcy, as other creditors might extend credit on the assumption the collateral was free and clear." *Gulino,* 779 F.2d at 548–49 (citations omitted). The recording of a lis pendens to secure one's interest in a property is precisely the type of conduct promoted by the drafters of the Code. It is a recorded notice to subsequent parties that they should not assume that the property is "free and clear."

■ The Bankruptcy Code does not require the attachment of a lien in order to perfect an interest. Appellees claim that if a statute expressly provides for the creation of a lien upon a party's action, then the lien would perfect the party's interest in the property. *In re Welsh & Son Contracting Co.,* 68 B.R. 520 (Bankr.D.Ariz. 1986) (statute provided for creation of lien upon levy of writ of attachment upon real property; perfection upon levy). Furthermore, they contend, in the absence of a statute providing for the creation of a lien, the interest cannot be perfected until judgment. *In re McCoy,* 46 B.R. 9 (Bankr. D.Ariz.1984) (statute did not provide for creation of lien upon service of writ of garnishment; perfection upon judgment). Appellees argue that, since the California lis pendens statute does not provide for the creation of a lien, perfection can only be achieved at judgment.

Appellees misinterpret the relevance of *Welsh* and *McCoy.* These cases do not stand for the maxim: Perfection at judgment, or by lien if statute so provides. Rather, these cases stand for the proposition that, under Arizona law, a party does

---

2. The court also allowed the debtor to file a declaration of homestead subsequent to the filing of the lis pendens. *Putnam,* 14 Cal.App.3d at 725–26, 92 Cal.Rptr. 636. However, this is an exception to the general rule. A homestead declaration can also be filed subsequent to the rendition of a judgment, and it will even defeat an existing attachment lien. *Id.* at 725, 92 Cal. Rptr. 636.

606

not attain an interest superior to a subsequent purchaser until a lien has been attached to the property in the case of an attachment proceeding, or until judgment in the case of a garnishment proceeding. *McCoy*, 46 B.R. at 12 ("This court is bound by Arizona's highest court's interpretation of garnishment liens. Thus, the words of that court in *Kuffel* [*v. United States*, 103 Ariz. 321, 441 P.2d 771 (1968)], that 'perfection must await judicial action' and a creditor 'did not have the right to the funds impounded' are controlling herein."); *Welsh*, 68 B.R. at 523 ("The creation of the express lien gives the attaching creditor priority over any subsequent bona fide purchasers or creditors. It is evident that, under 11 U.S.C. § 547(e)(1)(A), the levy of the writ of attachment meets the required perfection test.").

■ In contrast, under California law, a party attains an interest superior to subsequent purchasers upon recordation of the lis pendens. It is the fact of attainment of a superior interest, not the creation of a lien or the rendering of a judgment, that creates a transfer under the Bankruptcy Code in both California and Arizona.

Accordingly, we hold that the filing of a valid lis pendens is a transfer within the meaning of the Bankruptcy Code. Hurst's interest in the Lanes' property relates back in time to the filing of the lis pendens and is therefore not avoidable as a preference.[3]

REVERSED.

---

**3.** Because we reinstate the bankruptcy court's decision that Hurst is a secured creditor, we need not reach the effect of the Superior Court's finding of a fraudulent conveyance on the question of dischargeability of the Lanes' debt.