In re **ELDERCARE HOUSING FOUNDATION, INC.,**
Debtor.

**SYSCO FOODS COMPANY, INC.** and **Harris–Shcolnik & Associates, Inc., Appellants,**

v.

**ELDERCARE HOUSING FOUNDATION, INC., Appellee.**

BAP No. AZ–96–1041–MeRHa.
Bankruptcy No. 95–1175–TUC–LO.
Adversary No. A95–0087.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 18, 1996.

Decided Nov. 26, 1996.

J. Matthew Derstine, Snell & Wilmer, Tucson, AZ, for Sysco Foods Co., Inc., Harris–Shcolnik & Associates.

Ralph E. Seefeldt, Law Offices of Ralph E. Seefeldt, P.C., Tucson, AZ, for Eldercare Housing Foundation.

Before MEYERS, RUSSELL and HAGAN, Bankruptcy Judges.

## OPINION

JAMES W. MEYERS, Bankruptcy Judge:

## I

### FACTS

The parties stipulated to the following facts: On November 11, 1994, Sysco Foods Company, Inc. ("Sysco") and Harris–Shcolnik & Associates, Inc. ("Harris") filed a complaint in state court against Eldercare Housing Foundation, Inc. ("Eldercare"), together with an application seeking prejudgment writs of garnishment and attachment.

On December 6, 1994, the state court issued an order granting the application. On December 9, 1994, Sysco and Harris obtained writs of garnishment and served the writs on Bank One, Arizona, NA ("Bank One") and Pima Health Systems ("Pima").

Bank One answered the writ alleging that it held $38,078.66 of Eldercare's funds. Pima answered the writ alleging that it owed Eldercare $55,095.10 as of the service date of the writ. Subsequently, pursuant to a stipulation, certain funds were released leaving the garnishees holding the sum of $55,095.10 collectively.

On May 23, 1995, Eldercare filed for relief under Chapter 11 of the Bankruptcy Code. As of the petition date neither Sysco nor Harris had obtained a judgment on its complaint. Eldercare then filed a complaint in the bankruptcy court seeking a release of the writs of garnishment and turnover of the funds held by the garnishees on the basis that the garnishments constituted avoidable transfers under Code Section 547.

Sysco and Harris answered the complaint by contending that the transfers were not avoidable preferences because they did not occur within the 90–day preference period. Eldercare filed a motion for summary judgment and Sysco and Harris filed a cross-motion. The bankruptcy court conducted a hearing on December 14, 1995. On December 21, 1995, an order was entered granting Eldercare's motion, denying Sysco's and Harris' cross-motion and directing Bank One and Pima to relinquish the funds held to Eldercare.

## II

### STANDARD OF REVIEW

An order granting summary judgment is reviewed *de novo*. *In re Cohen*, 199 B.R. 709, 712 (9th Cir. BAP 1996). "The reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *In re Yarbrow*, 150 B.R. 233, 236 (9th Cir. BAP 1993).

## III

### DISCUSSION

In its complaint Eldercare seeks turnover of the funds and a determination regarding the validity of the interest asserted by Sysco and Harris. Eldercare contends that the writs were not transfers or, alternatively, they were avoidable as preferences.

We reject the argument that the writs of garnishment were not transfers. The definition of transfer pursuant to Section 101(54) is extremely broad. *In re Bernard*, 96 F.3d 1279, 1282 (9th Cir.1996). In *Bernard*, the Ninth Circuit Court of Appeals ruled that a debtor's withdrawal of cash from a bank account was a transfer since the debtor parted with a claim against the bank in exchange for the money. 96 F.3d at 1283. Here, through the writs of garnishment Sysco and Harris asserted an interest in the claims Eldercare had against Bank One and Pima. Additionally, the writs prevented Eldercare from gaining immediate access to the funds in question. Looking at the effect of the writs of garnishment, there was a transfer of an interest in property of the estate.

The remaining issue is whether Eldercare can avoid these transfers pursuant to Section 547. The only issue in dispute is the timing of the transfer. Sysco and Harris assert that the transfer was made outside the 90–day preference period. Under Section 547(e), the determination of when a transfer is made depends on when it is perfected.

For example, a transfer is deemed perfected immediately prior to the filing of the petition, if that transfer is not perfected at the time of the filing of the petition. 11 U.S.C. § 547(e)(2)(C). In such instances the transfer would fall within the preference period.

Pursuant to Section 547(e)(1)(B), a transfer is perfected "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Sysco and Harris contend that this occurred upon the service of the writs. The bankruptcy court previously addressed this issue in a published opinion. *In re McCoy,* 46 B.R. 9 (Bankr.D.Ariz.1984).

In *McCoy* a creditor obtained a prejudgment writ of garnishment outside the preference period, but then obtained a judgment within the period. The garnished funds were transferred to the judgment creditor. In response to a preference action filed to recover the funds, the creditor argued that the transfer of funds should have been treated as occurring at the time the writ of garnishment was served. The bankruptcy court concluded that under Arizona law the writ of garnishment did not create a lien and there was no lien until the creditor obtained a judgment. Since the lien was not perfected until the creditor obtained the judgment, and the judgment was obtained within the preference period, the court determined that the transfer could be avoided as a preference.

The court relied primarily on *Kuffel v. United States,* 103 Ariz. 321, 325, 441 P.2d 771, 775 (1968). In that case, the Arizona Supreme Court stated that the writ of garnishment "itself constitutes, at most, a lis pendens notice that a right to perfect a lien on the garnished property exists, but such perfection must await judicial action." *Id.* at 325, 441 P.2d at 775. All the garnishor obtained was the "right to have his claim heard without fear that the funds would be dissipated pending judgment." *Id.* at 325, 441 P.2d at 775.

This reasoning was reiterated by the Arizona Supreme Court in *Jackson v. Phoenixflight Productions, Inc.,* 145 Ariz. 242, 245–46, 700 P.2d 1342 (1985). In *Jackson* a creditor served writs of garnishment on the two entities indebted to an insolvent entity which owed money to the judgment debtor. Just a few days before the creditor obtained a judgment of garnishment, the state taxing authority recorded a notice of tax lien. The *Jackson* court held that service of the writs did not create a lien. Instead, "the effect of a writ of garnishment is to impound any asset or property of defendant which is found in the garnishee's hands pending resolution of the merits of the garnishor's claim." 145 Ariz. at 246, 700 P.2d at 1346. In so ruling the court held that "[s]ince plaintiff's writ and judgment did not create a lien, plaintiff did not gain priority over the state tax liens." *Id.* at 247, 700 P.2d at 1347.

In this case, Sysco and Harris did not obtain judgments prepetition. Pursuant to the dictates of the Arizona Supreme Court, the Panel is satisfied that the transfers effected by the writs were unperfected at the time of the filing of the petition. Under Section 547(e)(2)(C) the transfers are deemed to have been made immediately before the date of the filing of the petition and can be avoided as preferences.

Sysco and Harris contend that the reasoning of *In re Lane,* 980 F.2d 601 (9th Cir. 1992), calls for a different result. We find *Lane* to be distinguishable. In *Lane,* the creditor obtained a judgment prepetition. Even more importantly, since the judgment affected the title or right to possession of the real property at issue, under California law the judgment related back to, and received its priority from, the date the lis pendens was recorded. *Id.* at 604. There is no relation back under Arizona law for the writ of garnishment. This is in sharp contrast to a writ of attachment under Arizona law, as was explained in *Jackson, supra,* 145 Ariz. at 246, 700 P.2d at 1346. *See also In re J.H. Welsh & Son Contracting Co.,* 68 B.R. 520, 522–23 (Bankr.D.Ariz.1986) (judgment related back to date of recording of writ of attachment). Finally, we note that the *Lane* court, in summarizing the holdings of *McCoy* and *J.H. Welsh,* stated the following:

> Appellees misinterpret the relevance of *Welsh* and *McCoy.* These cases do not stand for the maxim: Perfection at judgment, or by lien if statute so provides. Rather, these cases stand for the proposi-

tion that, under Arizona law, a party does not attain an interest superior to a subsequent purchaser until a lien has been attached to the property in the case of an attachment proceeding, or until judgment in the case of a garnishment proceeding. 980 F.2d at 605–06.

## IV

## CONCLUSION

The writs of garnishment effected a transfer under Section 101(54). However, these transfers remained unperfected as of the bankruptcy petition. The bankruptcy court properly concluded that Eldercare could avoid the transfers and that the funds should be turned over to Eldercare.

AFFIRMED.