In re Merlin J. HARRIS, aka Mel Harris and dba Mel Harris Insurance Agency, a sole proprietorship, and Margaret R. Harris, Debtors.

John R. ROBERTS, A Professional Corporation, Trustee, Plaintiff,

v.

Alan D. HARRIS, Margaret R. Harris, Merlin J. Harris, and M.M.H. Trust, Defendants.

Bankruptcy No. 287–01741–B–7.
Adv. No. 287–0230.

United States Bankruptcy Court, E.D. California.

May 31, 1989.

John A. Tosney, Sacramento, Cal., for debtors.

Linda A. Selig, Sacramento, Cal., sp. counsel for John R. Roberts, Trustee.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Bankruptcy Judge.

The Chapter 7 Trustee, John R. Roberts, has objected to all of the exemptions claimed by Debtors MERLIN J. and MARGARET R. HARRIS. He has also filed a motion for summary judgment on his adversary complaint which seeks to set aside the "fraudulent transfer" of the Debtors' residence for the benefit of the Chapter 7 estate. Both matters were consolidated for hearing since the facts were related and all issues must be resolved in order to determine whether or not the Debtors can keep the house in which they have continuously resided with their children for the last 20 years.

## FACTUAL BACKGROUND

Debtor MERLIN J. HARRIS contracted hepatitis after an operation in 1974. Diabetes compounded his health problems which continued for several years. Becoming increasingly concerned about what might happen to his family and their economic well being should his health deteriorate further, he sought the advice of a non-lawyer friend who "knows a lot about trusts." In December 1977 the friend, who, in his own words, "was thoroughly aware of the benefits of trusts because I had been preparing them since 1964 and had seen them benefit many people" typed up a document entitled,

## M.M.H. TRUST

## IRREVOCABLE

which shall, for convenience, be referred to hereinafter as "the Trust".

Acting upon the instructions of their friend, the Debtors executed the Trust and other documents on December 26, 1977. One document was a notarized Quit Claim Deed from MARGARET as grantor to MERLIN as grantee. Another document was a notarized Individual Grant Deed from MERLIN as grantor to his son, ALAN D. HARRIS, wife MARGARET, and himself as "TRUSTEES for the M.M.H. TRUST". Both deeds set forth the legal description of the Debtors' residence at 2671 Louisiana Street in Sacramento, California (the residence) as the property conveyed. However, neither deed was recorded at that time.

ALAN joined his parents as one of the trustee signatories to the Trust document and the minutes of the first meeting of the trustees (minutes). According to the minutes, MERLIN was appointed as the "chairman" and "General Manager" while MARGARET was appointed as "Secretary and Recorder of Trust Minutes" and "Treasurer". "Schedule 'A'" was attached to the eight page Trust document and signed by the three trustees and again by MERLIN as "Grantor". It listed the property "included in the foregoing Trust Agreement" in two categories. Under "Real Property" was the legal description for the residence and under "Personal Property" was "Furniture, Antiques, Tools, Office Equipment and Miscellaneous but not including licensed vehicles." "Schedule 'A'" acknowledged delivery of the listed assets by the Grantor and receipt thereof by the trustees.

The Debtors' obvious purpose in executing the foregoing documents was to create an *inter vivos* trust and transfer to it all of their assets, except for "licensed vehicles". It is equally obvious from reading the Trust document, however, that neither the drafting friend nor the Debtors knew how to legally accomplish their purpose. Suffice it to say that the executed documents created more problems than they solved. For instance, no beneficiaries are named or described in the Trust document. Instead, it provides that "the names of the beneficiaries of this trust shall be set forth in the minutes thereof" in order "not to publicize the names of the beneficiaries". However, no beneficiaries are mentioned in the minutes. Despite the lack of any provision in the Trust document therefor, the Debtors

nevertheless claim that certificates representing 100 "units of beneficial interest" in the Trust were issued to the Debtors in exchange for the "transferred" assets.

ALAN resigned as trustee in January 1978. Since that time the Debtors have apparently been the sole trustees and sole beneficiaries of the Trust, but have taken virtually no action in respect thereto. In fact, the Debtor subsequently developed doubts about the protection afforded to their assets by the Trust. "Because I was not sure whether the trust was legal," MERLIN executed and recorded a homestead declaration in respect to the residence on August 1, 1983 "to protect my home". Almost three years later and for unexplained reasons, on June 12, 1986 MERLIN finally recorded the two deeds executed and notarized on December 26, 1977.

Having thus tidied up their financial affairs and apparently feeling the pressure from judgment creditors, the Debtors filed their voluntary petition for relief under Chapter 7 on March 30, 1987 without consulting an attorney. They did not list the residence, beneficial interests in the Trust, or household goods as assets nor claimed them as exempt on their B schedules. They did not mention the Trust nor the June 12, 1986 recordation of the two deeds in their Statement of Affairs.

At the first meeting of creditors held on May 7, 1987, the Trustee, in questioning the Debtors, found out about the Trust and the omissions from the Debtors' Schedules and Statement of Affairs. One week later the Trustee had filed his adversary complaint herein seeking to have the residence set over to the Chapter 7 estate. After answering the Trustee's complaint, the Debtors finally hired John Tosney as their attorney. Mr. Tosney and the Trustee reached an agreement to settle and the Trustee noticed his Application to Approve Compromise of Controversy. The application was denied by this court on February 3, 1988, however, upon the objections of judgment creditor ROBERT D. MERRILL, as Trustee of the bankruptcy estates of UNIVERSAL CLEARING HOUSE COMPANY, INDEPENDENT CLEARING HOUSE COMPANY and ACCOUNTING SERVICES COMPANY now pending in the United States Bankruptcy Court for the District of Utah, Central Division, who obtained his judgment against the Debtors on May 5, 1985. MERRILL's Sacramento attorney, LINDA SELIG, was subsequently appointed as special counsel to the Trustee to pursue the estate's claims against the Debtors.

On March 14, 1988 the Debtors filed amendments to their B schedules, listing household goods and their beneficial interest in the residence as assets and claiming them both as exempt on Schedule B–4. Whereas the Debtors had utilized California Code of Civil Procedure (C.C.P.) § 703.140 to claim their original filing, they chose the regular California exemption scheme (C.C.P. § 704.010 *et seq.*) in their amended Schedule B–4. The Trustee timely filed his objections to the Debtors' amended claim of exemptions, and the Debtors filed a second amended Schedule B–4 on May 18, 1988 with their Response to the Trustee's objections. Both of the amended B–4s claimed the residence exempt pursuant to C.C.P. § 704.920 (the Debtors actually cited § 704.910), the "declared" homestead exemption, rather than the "statutory" homestead provided in C.C.P. § 704.720. The May 18, 1988 amendment was filed by the Debtors in response to the Trustee's objections that household items were not listed and that the Debtors had not placed values on all of their listed assets.

## DISCUSSION

▪ As a preliminary matter, the Debtors contend that the Trustee's special counsel is outside her scope of authority in bringing this motion and, furthermore, has a conflict of interest due to her representation of one of Debtors' creditors. We note that the Trustee's application for this court's approval of special counsel included a request that counsel prepare objections to the Debtors' amended claim of exemptions. With respect to the allegation of conflict of interest we feel that special counsel does

not violate the requirements of disinterestedness as set forth in 11 U.S.C. §§ 101(13)(e) and 327(a), (c) and consequently find her to be qualified to represent the Trustee in this matter.

## OBJECTIONS TO DEBTORS' AMENDMENTS

■ The Trustee does not dispute the general right of the Debtors to amend their schedules at any time before the case is closed as provided in Bankruptcy Rule (B.R.) 1009(a). He does, however, object to giving any effect to the Debtors' amended exemption claims on the grounds that the Debtors acted in bad faith and that their delay in making their claims has prejudiced their creditors and the estate. He correctly points out that it was his objections to the Debtors' claims that caused the Debtors to file their amendments and that his efforts have incurred costs and fees to the estate.

At this point, the court notes the very practical problem facing trustees when debtors have either failed to claim assets as exempt or have made improper exemption claims. When the trustee attempts to administer the unclaimed asset or objects to the improperly exempted asset, the debtor files an amended exemption claim pursuant to B.R. 1009(a) and the trustee's efforts are thwarted unless he can show bad faith, concealment of property, or prejudice to a party in interest. *In re Andermahr*, 30 B.R. 532 (9th Cir.B.A.P.1983), citing *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982); *Matter of Williamson*, 804 F.2d 1355, 1358 (5th Cir.1986); *Tignor v. Parkinson*, 729 F.2d 977 (4th Cir.1984). It is this court's position that the diligent trustee should not go unrewarded. Thus, when he has taken appropriate action but is ultimately thwarted due to the debtor's overriding rights, debtor, having caused the trustee to act because of the debtor's initial negligence, should be required to reasonably compensate the trustee and reimburse him for his reasonable fees and expenses.

■ In the case at bar, the Debtors not only failed to claim their household goods and residence as exempt, they did not even list those assets on their Schedules. How-

ever, this court cannot find, as the Trustee alleges, that the Debtors concealed their assets or acted in bad faith. The Debtors revealed the existence of the Trust at the first meeting of creditors. Since the Trustee was able to file his complaint within one week after the first meeting of creditors, it is clear that the Debtors provided him with all necessary information in respect to the Trust and the residence, including the fact that the 1977 deeds were recorded on June 12, 1986. The Debtors' statements that they believed they did not have to list Trust assets on their Schedules, although inherently suspicious, is more believable than not, particularly when they had not consulted an attorney until well after the petition herein was filed.

Because of the Trustee's early discovery of the omitted assets, no prejudice can be shown by any interested party, other than the Trustee in respect to the omitted assets and exemption claims, as discussed above.

■ However, the Trustee complains that eight earned but unpaid insurance commissions amounting to about $2,500.00 were collected by the Debtors without challenge by the creditors due to their previously exempt status. Now that the Debtors no longer claim these premiums as exempt, the Trustee argues, the creditors are prejudiced.

MERLIN HARRIS, however, has acknowledged the receipt of these funds and has declared that an accounting would be made and the funds relinquished to the trustee upon allowance of the claimed exemptions. (Declaration of MERLIN J. HARRIS, at p. 4). Consequently, we find that any prejudice with respect to these funds is inconsequential and insufficient to bar the Debtors' amendments, provided that the Debtors surrender all of the premiums to the Trustee.

## OBJECTIONS TO DEBTORS' HOMESTEAD

■ The Trustee contends that because the Debtors' residence constitutes property under a trust, it cannot qualify as a "declared" homestead under C.C.P.

§ 704.910(c).[1,2] These arguments and the counter-arguments of the Debtors need not be addressed, however, in light of the fact that regardless of the effect of § 704.910(c), the Debtors' residence is nonetheless eligible for a homestead exemption under C.C.P. § 704.710 *et seq.,* which does not contain a provision precluding the homesteading of an interest of a beneficiary of a trust.

The statutory provisions for homestead exemptions are set forth in Article 4 (§§ 704.710—704.850) and Article 5 (§§ 704.910–704.995) of Title 9, Division 2, Chapter 4 of the C.C.P. Article 4 provides debtors with a "statutory" homestead exemption, while Article 5 provides for "declared" (i.e., recorded) homesteads. As stated in *In re Anderson,* 824 F.2d 754 (9th Cir.1987) at 756, "Article 4 and Article 5 each confer different rights on the debtor, and there is no overlap between those rights. A debtor may thus have Article 4 rights, Article 5 rights, or both or neither." However, under both Articles a debtor's homestead rights are protected by the same statutory procedure set forth in Article 4. That protection is provided by C.C.P. § 704.740(a) which in pertinent part states "... the interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article." C.C.P. § 704.970(a) specifically subjects declared homesteads to levies under writs of execution, and a dwelling must be levied upon to start the process of obtaining a

court order to sell it [*see* C.C.P. § 704.750(a)]. C.C.P. § 704.970(b) then provides that after any levy on a dwelling the debtor's and creditor's rights in respect thereto shall be determined under Article 4.

Thus, under California procedure, the Debtors need only claim the exemption at a properly noticed hearing to show cause as to why the judgment creditor's motion to sell the property should not be granted (C.C.P. § 704.770 *et seq.*), and so long as the interest qualifies as a "homestead" (C.C.P. § 704.710(c)[3]), the property, or proceeds from the subsequent sale of the property, will be exempt up to the statutory amount allowable pursuant to C.C.P. § 704.730, whether or not the Debtors have declared a homestead.

The Trustee does not contend that the real property claimed by the Debtors as exempt would otherwise not qualify as a homestead and it appears by virtue of the declaration of homestead signed by the Debtors and recorded on August 1, 1983 that the residence would most likely qualify as a homestead as contemplated by C.C.P. § 704.710(c).

## MOTION FOR SUMMARY JUDGMENT

█ In his motion for summary judgment the Trustee points out that the Debtors recorded the deeds conveying the Debtors' residential property to the Trust within one year prior to their filing bankruptcy. The Trustee also contends that the Debtors received no consideration for the property and were insolvent on the recordation date. Since these facts are essentially uncontest-

---

**1.** § 704.910(c) provides as follows: "Dwelling" means any interest in real property ... that is a "dwelling" as defined in § 704.710, **but does not include ... the interest of the beneficiary of a trust.** (Emphasis added).

**2.** The Trustee also argues that because the Debtors' are mere beneficiaries of the trust they do not qualify as "owners" for the purpose of meeting the residential requirements of C.C.P. § 704.920 which provides as follows: "A dwelling in which an **owner or spouse of an owner** resides may be selected as a declared homestead pursuant to this article ..." (Emphasis added).

Although the Debtors failed to respond to this argument, it seems to be without merit in light of the broad definition of "Declared Homestead

Owner" found in § 704.910(b)(1) which includes "... the owner of an **interest** in the declared homestead who is named as a declared homestead owner in a homestead declaration recorded pursuant to this article." The Harris' clearly qualify as "owners" under this section.

**3.** § 704.710. DEFINITIONS

As used in this article:
(c) "Homestead" means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead ...

ed by the Debtors, the Trustee argues that he is entitled to a summary judgment on his adversary complaint to avoid the "transfer" of the residential property under the provisions of Rule 56 of the Federal Rules of Civil Procedure as incorporated by B.R. 7056.

According to the Trustee the recordation of the deeds was a fraudulent transfer either under 11 U.S.C. § 548(a)[4] or under the Uniform Fraudulent Conveyance Act (U.F.C.A.) as adopted in California in California Civil Code §§ 3439 through 3439.12[5] made applicable by 11 U.S.C. § 544(b). The Trustee then concludes that the Debtors' residence can be recovered from the Trust for the benefit of the bankruptcy estate by reason of 11 U.S.C. § 550(a).[6]

The parties apparently presumed that the "transfer" of the property occurred upon the recordation of the 1977 deeds in June of 1986 rather than their execution in 1977 because a bona fide purchaser of real property in California is not bound by an unrecorded deed. Thus the "transfer," if it occurred at all, had to occur for 11 U.S.C. § 548 purposes when title was perfected in the Trust upon recordation of the deeds.[7] But a more important legal issue remains, namely; whether a "transfer" within the meaning of the Code has actually occurred so as to trigger the equitable relief provided under 11 U.S.C. §§ 544, 548, and 550.

Addressing first the issue of whether a "transfer" occured as a matter of law, the Bankruptcy Code defines a "transfer" as follows:

"Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of **disposing of or parting with** property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption. (11 U.S.C. § 101(50); emphasis added.)

The definition of "transfer" is necessarily broad as it was Congress' intention to include *any* disposition of *any* interest in property. (Senate Report No. 95–989, 95th Cong.2d Sess. 26–27 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5811–5813.) Given such a broad definition for what is a transfer under the Bankruptcy Code, it would seem at this stage of our analysis that the Trustee should be entitled to avoid the "transfer" for the benefit of the estate.

Considering the facts as they existed at the time of the recordation, the parties do not dispute that the Debtors were the sole settlors, trustees, and beneficiaries. California law has consistently and unequivocally recognized that although a trustor may create a valid trust naming himself as beneficiary, the assets in the trust are not immune from the claims of creditors. (See, e.g., *Nelson v. California Trust Co.*, 33 Cal.2d 501, 202 P.2d 1021 (1949); California Probate Code § 15304(a)). Thus, in the case at bar, although a valid trust conceivably might have existed at the time of recordation, any transfer of a property interest by the Debtors at that time to that

---

**4. Section 548. Fraudulent transfers and obligations.**

(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily involuntarily—

(2)(A) received less than a **reasonably equivalent value** in exchange for such transfer ...; and

(B)(i) was **insolvent** on the **date that such transfer was made** ...

**5.** The end result in this case would be the same under both the U.F.C.A. and 11 U.S.C. § 548. Consequently, our analysis will be limited to 11 U.S.C. § 548.

**6.** 11 U.S.C. § 550(a) provides in pertinent part as follows:

... to the extent that a transfer is avoided under section 544 ... (or) ... 548 ... of this title ..., the trustee may recover, for the benefit of the estate, the property transferred ... from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made ...

**7.** 11 U.S.C. § 548(d)(1) provides that:

(d)(1) *For the purposes of this section, a* **transfer is made** when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee ...

Trust would have been illusory because the assets were no less susceptible under the Trust to the claims of the Debtors' creditors than they would have been had no trust ever been created. Furthermore, because the assets of the Trust were subject to creditor's claims, the Trust, even if it was valid under California law, was not a "spendthrift trust," the assets of which would be excluded from the estate as contemplated by 11 U.S.C. § 541(c)(2). Finally, if the Trust were invalid under California law, the "transfer" in question would merely be a transfer from the Debtors to themselves. Therefore, the "transfer" that concerns the Trustee is illusory because the assets of the Trust, whether the Trust was valid or not, were never beyond the reach of the Debtors' creditors and thus never "transferred" from the Debtors' estate.

Although several issues of material, disputed fact might remain unresolved, this court's finding that no "transfer" occurred within the contemplation of the Code has rendered an analysis of those issues moot. More importantly, as a "transfer" of an interest is a necessary prerequisite to a § 548 or § 544 action, the above finding of no "transfer" deprives the Trustee's adversary complaint of merit. Therefore, in the interest of judicial economy and with an eye towards preventing further, unnecessary costs of litigation, it is hereby

ORDERED, ADJUDGED, and DECREED that the Trustee's motion for summary judgment is DENIED, and, furthermore, that the Trustee's adversary complaint number 287–0320 is DISMISSED due to this court's finding that no legal or equitable basis exists upon which the relief sought may be granted.

IT IS FURTHER ORDERED that the Trustee's objection to the Debtors' amendments to their schedules is OVERRULED provided that (1) the Debtors account to the Trustee for insurance commissions earned pre-petition but collected post-petition and pay the same to the Trustee and (2) that the Debtors make appropriate arrangements with the Trustee to reimburse him for all reasonable fees and expenses directly related to the Debtors' failure to reveal the existence of the Trust assets and their negligence in claiming their exemptions.

IT IS FURTHER ORDERED that the Trustee provide the court and the Debtors with an accounting of all fees and costs so incurred within 30 days of the effective date of this Order so that the aforesaid reasonable fees and expenses can be finally determined.

IT IS FURTHER ORDERED that the Debtors' homestead exemption claim of $45,000.00 is hereby approved and allowed.