In re Marceil Florent WALLAERT and Renee Grace Wallaert, Debtors.

Robert E. WISWALL, Trustee of the Bankruptcy Estate of Marceil Florent Wallaert and Renee Grace Wallaert, Plaintiff,

v.

Marceil Florent WALLAERT and Renee Grace Wallaert, husband and wife; Marceil and Renee Wallaert Loving Trust; U.S. Bancorp Mortgage Company; and American General Finance, Defendants.

Bankruptcy No. 92–32032.
Adv. No. 92–33117.

United States Bankruptcy Court,
W.D. Washington.

Nov. 30, 1992.

Jeffrey A. Meehan, Landerholm, Memovich, Lansverk & Whitesides, Inc., Vancouver, WA, for plaintiff/trustee.

Robert C. Russell, Law Offices of Robert M. Gregg, Vancouver, WA, for debtors/defendants.

## DECISION AND ORDER ON SUMMARY JUDGMENT MOTIONS

PHILIP H. BRANDT, Bankruptcy Judge.

The Trustee commenced this action against Debtors, their "Loving Trust", and encumbrancers of Debtors' residence, seeking to avoid as fraudulent Debtors' transfer of their residence to the Loving Trust by quit claim deed, recorded within one year of their petition date. In addition to avoiding the transfer, the Trustee seeks to sell the residence.

The questions presented on cross motions for summary judgment are whether the quit claim effected a transfer, and if so, whether that transfer was fraudulent. Respecting the first question, there was a transfer; as to the second, issues of material fact remain.

### I. JURISDICTION

This is a core proceeding and this Court has jurisdiction. 28 U.S.C. §§ 157(b)(2)(A), (H), (M), and (O) and 1334; GR 7, Local Rules W.D.Wash.

### II. FACTS

On 15 November 1990, Debtors Marceil Florent Wallaert and Renee Grace Wallaert executed a quit claim deed, affirmatively reciting that it was given for no monetary consideration, and conveying their residence to themselves as "Trustees ... under the Marceil and Renee Wallaert Loving Trust dated November 15, 1990, ..." That deed was recorded in Clark County, Washington, on 23 May 1991. Wallaerts filed

their Petition for Relief under Chapter 7 of the Bankruptcy Code [1] on 1 May 1992, less than one year later. Wallaerts identified their residence as an asset of the estate and claimed a homestead exemption under RCW Chapter 6.13. The transfer to the trust was not disclosed in their Petition, Schedules, or Statement of Financial Affairs.

At or around the time of the First Meeting of Creditors, the Trustee, Robert Wiswall, became aware of the conveyance to the Trust, and he filed a timely objection to the claim of exemption. I heard that objection on 14 August 1992, and denied it on the basis that an equitable interest in residential property is sufficient to support a homestead exemption under Washington law. RCW 6.13.010; *Felton v. Citizens Federal Savings*, 101 Wash.2d 416, 419–420, 679 P.2d 928 (1984). For clarity, Debtors' exemption is of their beneficial interest, and not of the real property itself.[2]

The Trustee thereafter filed this adversary proceeding, seeking to invalidate the Wallaerts' conveyance of the residence to the Trust under § 548(a) [3], alleging they did not receive reasonably equivalent value, that they were rendered insolvent by the transfer, and that they made the transfer with the intent to hinder, delay, and/or defraud creditors.

### III. CONTENTIONS

Plaintiff Trustee contends that the quit claim effected a transfer which was admittedly for no consideration. Further, the home was the most valuable asset scheduled by Debtors. If that asset is not considered, Wallaerts' debts exceeded their assets: the Trustee alleges there was no material change in their financial position between the recording of the quit claim deed and their filing for relief.

---

1. 11 U.S.C.: references to "§", "Section" or to "Chapter" without more, are to the Bankruptcy Code.

2. See also, *In re Moffat*, 107 B.R. 255 (Bkrtcy. C.D.Cal.1989), upholding the debtor's exemption, under California law, of his interest as a

beneficiary holding a life estate under a self-settled living trust.

3. The Trustee also seeks to sell the residence under § 363(f); it is unnecessary now to resolve this issue.

Wallaerts' position is that they transferred nothing by merely conveying legal title into a self-settled living trust, of which they are grantors, trustees, and lifetime beneficiaries, because under state law [4] self-settled trusts are void as against existing or future creditors. In essence, Debtors' position is that their trust is an estate planning device only, with no present effect.

## IV. ANALYSIS

A. *Summary Judgment:* Summary judgment is appropriate when, considering the evidence most favorably to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056 (making applicable Fed.R.Civ.P. 56); *Lake Nacimiento v. San Luis Obispo County,* 830 F.2d 977 (9th Cir.1987), *cert. den.,* 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988). As the summary judgment rule's purposes include disposing of claims (and defenses) without factual basis, the party resisting must go beyond the pleadings and show specific facts raising genuine and material issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. *Avoidance:* Section 548(a) provides: The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; ...

Three issues must be resolved: whether a "transfer" occurred, and, if so, whether it was actually (Debtors intended the transfer to hinder or delay creditors) or constructively (Debtors did not receive reasonably equivalent value, or were rendered insolvent) fraudulent.

1. *Transfer:* Other issues are irrelevant if there was no transfer to avoid. The Bankruptcy Code defines "transfer" as:

.... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption; [5]

The parties take diametrically opposed positions on the application of this provision to Wallaerts' conveyance to the Trust: Debtors assert that, since the property remained subject to the claims of their then and future creditors, nothing was conveyed. Trustee contends, in essence, that title is inherently an "interest in property".

No Trust documentation is in the record. There is no dispute that Wallaerts are settlors, trustees, and beneficiaries under the Trust, but no further information about the trust is disclosed, e.g., whether there are other beneficiaries, whether Wallaerts have an unconditional right to reconvey the property to themselves in fee, or power to revoke the Trust.[6]

Debtors rely principally on *In re Harris,* 101 B.R. 210 (Bkrtcy.E.D.Cal.1989). In

**4.** RCW 19.36.020:

That all deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the existing or subsequent creditors of such person.

**5.** Section 101(54): there are two subsections 101(54), the other defining "stock broker": see footnote 4 to *Barnhill v. Johnson,* 503 U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

**6.** *See,* Robert A. Esperti and Renno L. Peterson, *Loving Trust* (1988), chap. 6.; D. Clifford, *Plan Your Estate with a Living Trust* (1989), App. I.

**668**

that case, debtors conveyed their home and household goods to themselves and their son as trustees in 1977 under poorly and incompletely drafted trust documents. The son resigned as the trustee in 1978, and in December 1986 the Harrises recorded the deed, after having recorded a declaration of homestead on the property in 1983. Harrises filed for Chapter 7 relief in March of 1987, but did not schedule the residence, their beneficial interest in the trust, or their household goods as assets, nor did they claim them as exempt. They did disclose those matters at their First Meeting of Creditors. Harrises' trustee thereupon filed an adversary proceeding to recover the residence for the estate, at which point debtors hired counsel and moved to amend their schedules and claim of exemptions. The Bankruptcy Court approved, over a creditor's objection, the Harrises' amendments to their schedules and their claim of a homestead exemption (under California law) in the residence. The *Harris* court quoted the code's definition of "transfer", emphasizing the phrase "disposing of or parting with", and focusing on the principle in California law "that although a trustor may create a valid trust naming himself as beneficiary, the assets in the trust are not immune from the claims of creditors [citations omitted]", concluded:

> Therefore, the "transfer" that concerns the trustee is illusory because the assets of the trust, whether the trust was valid or not, were never beyond the reach of the debtors' creditors and thus never "transferred" from the debtors' estate.

101 B.R. at 215–216.

While the effect of a self-settled trust on creditors' rights under Washington law is essentially identical to that of California law, I must respectfully disagree with the *Harris* court's analysis.

■ Section 101(54) does not speak in terms of an effect on creditors: rather, it focuses on what, if anything, the debtor parted with. The all-encompassing language unambiguously comprehends *any*

disposition of *any* interest in property.[7] Congress knew how to condition the effect of its words on benefit or detriment to creditors, e.g., §§ 547(b)(5) and (c) and 1124, but did not do so.

■ Interests in property are determined by state law. *Barnhill v. Johnson, supra* note 6; *In re BFP*, 974 F.2d 1144 (9th Cir.1992). Thus the question becomes whether, under Washington law, Wallaerts parted with anything by transferring fee title of the property to the Trust.

■ Since territorial days, equitable title has not been marketable title in Washington. *Ankeny v. Clark*, 1 Wash. 549, 20 P. 583 (1889), aff'd, 148 U.S. 345, 13 S.Ct. 617, 37 L.Ed. 475 (1893). As noted in the annotation, *Marketable Title*, 57 A.L.R. 1253, 1341–1342 (1928):

> An equitable title—that is, a right or title to property which will be enforced in a court of equity in behalf of the holder—does not constitute a marketable title, since, from its very nature, it exposes the holder to the hazard of litigation to establish his title, or have it converted into a legal title; and it also very frequently requires parol evidence to establish it. This rule applies where the naked legal title is outstanding in a trustee, although he may be compelled to convey at any time, since a title which depends upon an action at law or in equity is not marketable. [footnotes omitted]

Assuming Wallaerts had good legal title free from defect before their conveyance to the Trust, they had marketable title; after that conveyance, they did not, and their interest was transformed from legal to equitable. Their quit claim deed effected that transformation, and conveyed legal title to the Trust (precisely, to themselves as trustees). The Trust now has record title, and with that, legal power to convey or encumber Debtors' residence. That power must fairly be characterized an interest in property, when the lack of it is, under state

---

**7.** H.R.Rep. No. 95–595, 95th Cong., 1st Session, at 314 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Session, at 27 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6271, 5787, 5812–5813.

law, a defect entitling a purchaser to rescind a contract to purchase real property.[8]

 2. *Actual Fraud:* The trustee argues that Wallaerts' conveyance to the Trust, taken together with their failure to disclose that transfer in their schedules, evidences actual fraudulent intent. Marceil Wallaert, in his affidavit, indicates he and his wife were advised by the attorney who prepared the documents that the Trust would not shield the property from the claims of creditors, and that the Trust was created solely for estate planning purposes. Debtors' intent remains a factual issue, precluding summary judgment on this issue.

3. *Constructive Fraud:* There having been a transfer, the Trustee must show that Debtors did not receive reasonably equivalent value for the interest they transferred, or that the transfer rendered them insolvent, to prevail. On these questions, material issues of fact remain: although the Trustee has submitted uncontroverted evidence of the value of the real property, neither party has delineated precisely the interest Wallaerts transferred, or the value of that interest.

## V. ORDER

Wallaerts' Motion for Summary Judgment is DENIED, and the Trustee's Motion is GRANTED IN PART: Wallaerts' quit claim to themselves as trustees was a transfer, but material issues of fact remain respecting their intent to defraud creditors, whether they received reasonably equivalent value, and whether they were rendered insolvent.

---

**8.** This result is consistent with the Bankruptcy Appellate Panel's recent holding that the post-petition recording of a pre-petition [deed of trust] trustee's deed required relief from stay, *Jewett v. Shabahangi,* 146 B.R. 250 (9th Cir. BAP 1992).