In re Alan **BERNARD**, Linda Bernard, Debtors.

Alan **BERNARD**, Linda Bernard, Appellants,

v.

Clement **SHEAFFER**, Mary Sheaffer, Appellees.

No. 94–56504.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1996.

Decided Sept. 25, 1996.

See also, 40 F.3d 1028.

Richard M. Moneymaker, Moneymaker & Kelley, Los Angeles, CA, for debtors-appellants.

Jamie R. Schloss, Los Angeles, CA, for appellees.

Before: O'SCANNLAIN and TROTT, Circuit Judges, and VAN SICKLE, District Judge.*

Opinion by Judge TROTT; Dissent by Judge O'SCANNLAIN.

TROTT, Circuit Judge:

Alan Bernard and his wife Linda argue that the district court erred when it affirmed the bankruptcy court's decision to deny discharge of the Bernards' debts under 11 U.S.C. § 727(a)(2)(A), which provides that a bankruptcy court should not grant discharge where "... the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition...." We affirm the district court because the Bernards violated this provision when they withdrew over $64,000 from money market and deposit accounts with the admitted intent to hinder the Sheaffers' attempts to attach the Bernards' accounts. We need not reach the other issues raised.

We have jurisdiction over the Bernards' timely appeal under 28 U.S.C. § 158(d). This appeal raises an issue of law which we review de novo.

### Background

This case has followed a long and tortuous path and makes bankruptcy seem more like an ordeal than a fresh start. Fortunately, we need little case history to fully illuminate the dispositive issue.

---

* The Honorable Bruce M. Van Sickle, Senior District Judge for the District of North Dakota, sitting by designation.

Alan Bernard and Clement Sheaffer have been television sound technicians for over thirty years. In the 1980s, they were business partners in Cell Communications and shareholders in Cell Communications–U.S.A., Inc. Sheaffer sold his interest in these concerns on November 10, 1987 in exchange for promissory notes from the partnership and the corporation. Bernard was individually liable as a general partner on the partnership note and was a guarantor of the corporate note. The notes went into default, and, on December 20, 1990, Clement Sheaffer and his wife Mary sued Alan Bernard on the notes.

On February 15, 1991, the Sheaffers served notice on Bernard that the Sheaffers would apply for a "temporary protective order" in Los Angeles Superior Court. On February 22, the Bernards withdrew $44,010.61 from Alan's money market account; on March 8, Linda cashed a check for $20,000 on an account of Alan Bernard Sound (collectively, the "early 1991 withdrawals"). On March 13, the Superior Court granted a temporary protective order instructing Alan Bernard "to make no transfers from any deposit accounts or any other assets other than in the ordinary course of business for fair consideration." On March 27, the Superior Court issued an order giving the Sheaffers the right to attach Alan Bernard's property in the amount of $47,873.13. On July 17, the Sheaffers levied on a Bernard account, attaching $1,308. On September 10, 1991, the court granted the Sheaffers a $83,574.98 judgment.

The Bernards filed for Chapter 7 on October 7, 1991. The Sheaffers began an adversary proceeding in which they objected to discharge.

Alan Bernard at first steadfastly testified that he had made the $44,010 withdrawal to finance a vacation. He later testified, under pressure, however, that he had cashed out his account because an attorney had advised him to do so to evade attachment. His counsel as much as concedes his client's purpose to defeat the impending judgment. Bernard says that he then stashed the cash in a safe at his home. Shortly thereafter, he claims he spent the cash on vacations during which he incurred huge gambling losses. Ber-

nard's testimony as to all of this is a model of dissemblance and dissimulation. As a result of his purposeful activity, his judgment creditors ended up with little to show for their lawsuit and their promissory notes; and with the help of other questionable transactions by Bernard, the bankruptcy estate became virtually worthless.

On February 3, 1994, the bankruptcy court issued a memorandum and order denying discharge on the ground that the Bernards had violated § 727(a)(2)(A). In justifying its decision, the bankruptcy court cited several of the Bernards' transfers in addition to the early 1991 withdrawals under present discussion. However, it clearly considered the early 1991 withdrawals sufficient by themselves to justify denial of discharge, stating, "[t]here is no doubt that the Bernards made these transfers with intent to hinder, delay or defraud creditors within one year of the filing for bankruptcy."

On September 28, 1994, the district court entered an order affirming the bankruptcy court's decision. The Bernards appealed.

## Discussion

11 U.S.C. § 727(a)(2)(A) states:

(a) The court shall grant the debtor a discharge, unless—...

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ...

 (A) property of the debtor, within one year before the date of the filing of the petition....

In keeping with the "fresh start" purposes behind the Bankruptcy Code, courts should construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge. *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985). Denial of discharge, however, need not rest on a finding of intent to *defraud.* Intent to hinder or delay is sufficient. *Matter of Smiley,* 864 F.2d 562, 568 (7th Cir.1989); *In re Adeeb,* 787 F.2d 1339, 1343 (9th Cir.1986). Furthermore, a debtor need not succeed in harming creditors to warrant denial of discharge because "lack of injury to creditors is irrelevant for purposes of deny-

ing a discharge in bankruptcy." *In re Adeeb,* 787 F.2d at 1343.

■ The Bernards have admitted they made the early 1991 withdrawals to help fend off the Sheaffers' attempts to reach the Bernards' assets. These withdrawals were made within one year of the Bernards' October 7, 1991 filing. Therefore, the only remaining question is whether these withdrawals were "transfers" of property. If they were, then the Bernards violated § 727(a)(2)(A), and the bankruptcy court was correct to deny discharge.

Of course, the Bernards contend that the withdrawals were not transfers in any meaningful sense. By taking money out of the bank, as it were, they claim they merely moved their assets from one of *their own* pockets to another—they had not "transferred" anything to anyone.

This argument has force and arguably finds some support in out-of-circuit law. For instance, the Seventh Circuit has stated, "[i]n order to justify the refusal of discharge under a section 727(a)(2) transfer, 'it must be shown that there was an actual transfer of valuable property belonging to the debtor which reduced the assets available to creditor and which was made with fraudulent intent.' " *Matter of Agnew,* 818 F.2d 1284, 1289 (7th Cir.1987) (quoting 4 *Collier on Bankruptcy,* ¶ 727.02[5] (15th ed. 1986)). At least in theory, the Bernards' withdrawals did not reduce the assets available to the Sheaffers—these assets merely changed form. Thus, one could plausibly argue that, under *Agnew,* the bankruptcy court was wrong to deny discharge to the Bernards.

■ This argument faces two insurmountable problems, however. First, in *In re Adeeb,* this court held that "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." 787 F.2d at 1343. Therefore, according to the Ninth Circuit, depletion of assets is not a prerequisite to denial of discharge under § 727(a)(2)(A).

Also, the Bernards' argument fails to take proper account of the Bankruptcy Code's definition of "transfer," which is *extremely* broad:

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption....

11 U.S.C. § 101(54). The legislative history of this definition confirms its breadth:

A transfer is a disposition of an interest in property. The definition of transfer is as broad as possible. Many of the potentially limiting words in current law are deleted, and the language is simplified. Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property. *A deposit in a bank account or similar account is a transfer.*

S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5813 (emphasis added).

If, as the legislative history indicates, depositing money into a bank account is a transfer, then later withdrawing money from that account should be a transfer, too—it ought to be a two-way street. However, we need not rely on legislative history (and all of its attendant difficulties) to reach this conclusion.

■ The Bernards did not own money gathering dust in their bank accounts. "As between the bank and the depositor such money becomes the property of the bank and the bank becomes the debtor of the depositor for the amount deposited." *Chang v. Redding Bank of Commerce,* 29 Cal.App.4th 673, 681, 35 Cal.Rptr.2d 64 (Cal.App.1994) (citation omitted); *Crocker–Citizens Nat. Bank v. Control Metals Corp.,* 566 F.2d 631, 637 (9th Cir.1977) ("It is a well-settled principle of California law that the relationship between a bank and its depositor is one of debtor and creditor. Therefore, when funds are deposited, title to those funds passes immediately to the bank.") (citations omitted); *see also Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) ("A person with an account at a bank enjoys a

claim against the bank for funds in an amount equal to the account balance.").

Instead of owning money sitting in their accounts, the Bernards owned claims against their bank. When they withdrew from their accounts, they exchanged debt for money (which, more than incidentally, was more difficult for the Sheaffers to acquire). Thus, when the Bernards made their withdrawals they parted with property, satisfying the Code's definition of transfer. Because they parted with their claims against the bank to hinder the Sheaffers, the Bernards violated § 727(a)(2)(A), warranting denial of discharge.

### Conclusion

■ Denial of discharge is a harsh result. However, bankruptcy has its roots in equity. To get equity, one must do equity. The Sheaffers took legal action to help them collect on a debt owed them by the Bernards. The Bernards intentionally and successfully hindered this effort by making withdrawals from accounts which were under threat of attachment. They now seek to avoid denial of discharge by hiding behind a narrow reading of the word "transfer" as defined by the Bankruptcy Code. "Transfer" is too broad to allow this result.[1]

**AFFIRMED.**

O'SCANNLAIN, Circuit Judge, dissenting:

Because I am not persuaded that the Bernards "disposed of" or "parted with" property, I respectfully dissent.

Section 727 is at the heart of the Bankruptcy Code's provisions designed "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Williams v. U.S. Fidelity Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915), *quoted in In re Devers,* 759 F.2d 751 (9th Cir.1985). As such, it is "construed liberally in favor of the debtor and strictly against those objecting to discharge." *In re Adeeb,* 787 F.2d 1339, 1342 (9th Cir.1986).

The majority is correct to observe that the definition of "transfer" in the Bankruptcy Code is very broad; it would be a mistake, however, to read it even more broadly than it is written. " '[T]ransfer' means every mode ... of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(54). If there is no "disposing of" or "parting with" property, then there is no transfer. The question in this case is whether the simple act, without more, of withdrawing money from bank accounts and money market accounts is "disposing of" or "parting with" property.

When the Bernards withdrew money from their own accounts in early 1991, they did not relinquish an interest in property; they merely changed the location of identifiable cash funds. No third party gained an interest in the cash, and the total value of the Bernards's assets did not change. Just as a transfer would occur neither when a debtor breaks a twenty-dollar bill into two ten-dollar bills nor when he cashes his paycheck at his employer's bank, no transfer occurred here. The cash received by the Bernards was exactly equivalent to and easily identifiable as the sums previously deposited in their accounts.

The majority breaks with the Seventh Circuit in interpreting section 727(a)(2), claiming that this court's decision in *In re Adeeb,* 787 F.2d 1339 (9th Cir.1986), controls. With respect, I read *Adeeb* as holding only that "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *Id.* at 1343. In contrast to the case before us, however, *Adeeb* dealt with an unambiguous transfer of property to third parties, followed by a re-transfer back to the debtor. *Id.* at 1341–42. *Adeeb* says nothing about whether there must be injury to creditors for a transfer to occur; the first transfer did indeed harm Adeeb's creditors. *Adeeb* merely held that later retransfers were not a defense to a denial of discharge.

The Seventh Circuit has addressed directly whether a transfer can occur if a transaction did not harm creditors. In *Matter of Agnew,* it held that "to justify the refusal of dis-

1. We deny all pending motions and requests for    sanctions.

charge under a section 727(a)(2) transfer, 'it must be shown that there was an actual transfer of valuable property belonging to the debtor which reduced the assets available to creditor and which was made with fraudulent intent.' " *Matter of Agnew*, 818 F.2d 1284, 1289 (7th Cir.1987) (quoting 4 *Collier on Bankruptcy*, ¶ 727.02[5] (15th ed. 1986)).

The *Agnew* approach is consistent with decisions of bankruptcy courts in this circuit. For example, in *In re Harris*, 101 B.R. 210 (Bankr.S.D.Cal.1989), a bankruptcy court concluded that a debtor did not "transfer" property when he conveyed assets to a trust naming the debtor as sole beneficiary because "the assets were no less susceptible under the Trust to the claims of the Debtors' creditors than they would have been had no trust ever been created." *Id.* at 216. *See In re Garcia*, 168 B.R. 403, 407 (D.Ariz.1994) (recording declaration of homestead is not a transfer because there was no reduction of assets available to creditor).

It seems to me that debtors should not be punished for transferring assets available to creditors unless the record establishes that they are actually disposing of or parting with those assets. The bankruptcy court found only that the Bernards withdrew $44,010.61 from a money market account and $20,000 from a checking account in early 1991; it made no findings as to what happened to the money after that and the testimony was controverted.

Based on the record in this case, the only question before us is whether the withdrawals, as such, were "transfers" as a matter of law. On this issue, I respectfully dissent from the majority's opinion.